174 So.2d 614 (1965)
CROWN ICE MACHINE LEASING COMPANY, a Michigan corporation, Appellant,
v.
SAM SENTER FARMS, INC., a Florida corporation, Sam Senter, and James Talcott, Inc., a New York corporation, Appellees.
No. 4656.
District Court of Appeal of Florida. Second District.
March 31, 1965.
Rehearing Denied May 11, 1965.
*615 Sullivan & Robinson, West Palm Beach, for appellant.
Gibson, Gibson & Reese, West Palm Beach, for appellees.
DRIVER, B.J., Associate Judge.
Appellant, Crown Ice Machine Leasing Company, a corporation, appeals from a Final Decree entered by the Circuit Court of Palm Beach County, Florida, rescinding and cancelling a written contract between it and Sam Senter Farms, Inc., a corporation. *616 Appellant was defendant and appellee was plaintiff below. Appellant will hereafter be referred to as "Crown Ice" and appellee as "Farms."
The Record on Appeal reflects a complex pleading structure and an involved factual background. However, only so much of the pleadings and facts as are necessary to this Opinion will be recited.
Farms owns in Belle Glade, Florida, a packing house, where it prepares large volumes of fresh vegetables for shipment in carload lots. Crown Ice is a corporation engaged in the furnishing of ice and ice-making equipment to commercial users of ice. The two corporations, through their respective officers, Sam Senter, individually for Farms, and a Mr. Stella, for Crown Ice, during the summer and early fall of 1959, entered into negotiations, which led to a contract between the two corporations, whereby Crown Ice installed in Farms' packing house an ice-making machine designed to produce "snow ice," which was a type of ice required in Farms' operations. In exchange for the use of the ice-making equipment, Farms was to pay rental of $30,000 per year.
Shortly after the ice-making equipment was installed, disputes arose because of the failure of the ice machine to operate properly or to fulfill the purposes for which Farms had contracted. Consequently, upon the alleged failure of the machinery to operate, Farms refused to make the rental payments, and litigation ensued. However, this litigation was settled when the parties entered into a "substitute contract" dated June 29, 1961.
This latter contract of 1961 cancelled out the previous contract between the parties and released the parties from their obligations thereunder, with the proviso, however, that, if Farms should default in the 1961 contract, then the parties would revert to their status under the previous contract, which had been dated October 24, 1959.
Under the new or substitute contract, it was agreed that Crown Ice would take over the actual operation of the ice-making equipment already installed by Crown Ice at Farms' packing house, and Crown Ice would maintain and operate the machinery. Farms agreed to make facilities available for the ice-making equipment and to give Crown Ice the right to repair existing equipment and to install additional equipment as might be necessary. Farms further agreed to purchase the total ice-making capacity of the equipment from October 1st through June 30th of each year of the term of the agreement, paying $8 per ton for the ice purchased.
Under this agreement, Crown Ice took over the operation of the ice plant and installed additional equipment, including the equipment necessary to deliver the snow ice from the ice-making machine itself to where it was needed in the freight cars and trucks loaded at Farms' packing house. The record shows that even after efforts were made to correct the deficiencies in the operation of the ice-making and loading equipment, Farms complained that the equipment was not fulfilling the purpose for which it (Farms) had contracted. Crown Ice thereupon installed additional equipment in an effort to satisfy Farms' complaints. It is disputed as to whether or not the latter efforts of Crown Ice were effective. However, the Chancellor apparently found that they were not. This finding of the Chancellor is binding upon this Court.
On March 26, 1962, Farms notified Crown Ice that it would purchase no more ice from Crown Ice, and directed that the equipment of Crown Ice be removed from Farms' packing house. Crown Ice disputed Farms' action in rescinding the contract, charging that Farms had not purchased all of the ice produced by Crown Ice's icing equipment, and asserting Crown Ice's ability to fulfill the contract. However, the ice-making equipment was, in due time, removed by Crown Ice and leased to Swift & Company in Gainesville, Georgia. Farms, after notifying Crown Ice of its action, *617 then filed suit to rescind and cancel the contract, alleging, in substance, that Farms had been induced to enter into the contract through misrepresentations that Crown could and would furnish all the ice required by Farms as needed, and alleging further that it was impossible for Crown Ice to perform in the manner to which it had agreed. Crown Ice answered the complaint and counterclaimed for damages against Sam Senter Farms, Inc., the appellee corporation, and against Sam Senter individually, as guarantor. The trial court, after taking volumes of testimony, on final hearing rescinded and cancelled the contract, as prayed for by Farms, and denied to Crown Ice any relief on its counterclaim. It is this Order that is appealed from.
Appellant assigned numerous errors as grounds for reversal. However, these are all encompassed in the two questions posed and argued in appellant's brief.
As to the first of these, Crown Ice contends that the complaint should have been dismissed for failure to state a cause of action in that (a) it failed to allege any misrepresentation of a material fact; and (b) the complaint was fatally defective in not alleging an offer to restore Crown Ice to its original position. We shall first take up this attack on the ruling of the Chancellor in sustaining the complaint. The Chancellor in his decree found some equity in the complaint and, therefore, properly denied the motion to dismiss. We agree with the Chancellor.
The fundamental requirements necessary to state a cause of action for rescission or cancellation of a contract are:
(1) The character or relationship of the parties;
(2) The making of the contract;
(3) The existence of fraud, mutual mistake, false representations, impossibility of performance, or other ground for rescission or cancellation;
(4) That the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission.
(5) If the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible.
(6) Lastly, that the moving party has no adequate remedy at law.
These minimum fundamental requirements were met by Farms in its original complaint, even though there was no allegation to restore Crown Ice to its original position. This was not necessary for the reason that, under the other allegations of the complaint, it was averred that Farms owed no further duty to Crown Ice, and that it (Farms) had received no benefits for which it still owed Crown Ice.
Concededly, the original complaint could have been more explicit in its allegations, but, reading the complaint as a whole, it alleges sufficient facts, which, if proved, would entitle Farms to rescission or cancellation of the contract under the theories of "impossibility of performance" or "frustration of purpose." These two theories of "impossibility of performance" or "frustration of purpose," while theoretically distinct, are often confused by the courts and textbook writers in applying them. (Corbin on Contracts, Vol. 6, § 1353.) The complaint would have entitled Farms to seek relief under either one of these theories. "Impossibility of performance" refers to those factual situations, too numerous to catalog, where the purposes, for which the contract was made, have, on one side, become impossible to perform. "Frustration of purpose" refers to that condition surrounding the contracting parties where one of the parties finds that the purposes for which he bargained, and which purposes were known to the other party, have been frustrated because of the failure of consideration, or impossibility of performance by the other party. (Corbin on Contracts, *618 supra; 13 Corpus Juris  Contracts, Sections 708, 709 and 710; 17A C.J.S. Contracts §§ 461, 462.)
Farms in its complaint averred that it had entered into the contract for the purpose of having a readily available supply of ice; that Crown Ice was aware of Farms' needs, and induced Farms to enter into the contract upon the representation that Crown Ice, through its equipment installed at Farms' packing house, could and would supply this need. The complaint further averred that with the equipment for which the parties contracted Crown Ice could not possibly fulfill its bargain, and that, consequently, Farms alleged implicitly although not explicitly that its purposes in making the contract had been frustrated, and it was entitled to be discharged from its obligations.
Crown Ice, as defendant-counter-claimant below, contended that it should be made whole for its expenses and costs incurred in installing the equipment in Farms' packing house, as well as loss of profit from the contract, and that the complaint was infirm for not alleging an offer to restore or make whole Crown Ice, citing as authority Willis v. Fowler, 102 Fla. 35, 136 So. 358; Pryor v. Oak Ridge Development Corporation, 97 Fla. 1085, 119 So. 326; and Columbus Hotel Corporation v. Hotel Management Company, 116 Fla. 464, 156 So. 893.
We agree with the Chancellor that the principles laid down in the above cited cases are not applicable herein. In each of the cases cited the party seeking rescission was, at the very time it sought rescission, in receipt of tangible benefits from its adversary, for which the adverse party had not been compensated. This is not so in the case at bar, since the only thing Farms had agreed to do was to purchase the ice from Crown Ice, and not the equipment to make that ice. And further, that Crown Ice had been compensated for all ice delivered to Farms. To require Farms to allege anything further in its complaint would require the Court to go further than construing the contract and, in effect, would constitute writing into the contract a duty on Farms to purchase the ice-making equipment, or pay for ice, which it had never received. The former could not be, for the reason that Crown Ice still has its equipment, for which it is collecting rents from Swift & Company, and certainly the latter ought not be required, since it would constitute payment of a penalty, and unjustly enrich Crown Ice by requiring Farms to pay Crown Ice for ice which it had never received. (Poinsettia Dairy Products v. Wessel, 123 Fla. 120, 166 So. 306, 104 A.L.R. 216.)
We now proceed to the second point raised by appellant; that is, that, if Crown Ice had made any misrepresentations to Farms to induce Farms to enter into the contract, these misrepresentations were in the nature of a promise to do something in the future, and, as such, insufficient to support an action for rescission and cancellation of contract.
Farms, in its complaint, alleged that Crown Ice was fully aware of the requirements of the vegetable-processing business and of the need for having ice immediately available when required, and that Farms was induced to contract with Crown Ice only after being assured that Crown Ice, with the equipment installed and maintained on Farms' premises, would furnish all of the ice needed by Farms when needed. Implicit in the Chancellor's finding is that this inducement was made by Crown Ice and that the equipment installed by Crown Ice was not capable of fulfilling the needs of Farms. There is ample evidence in the record to sustain this finding by the Chancellor.
Under these circumstances, having found impossibility of performance on the part of Crown Ice, with the consequent frustration of Farms' purposes in making the contract, the learned Chancellor had no alternative but to find for Farms and against Crown Ice. (13 Corpus Juris  Contracts, Secs. 708, 709, 710, pp. 638, 639; 17A C.J.S. Contracts §§ 461, 462.)
*619 Appellant argues that Crown Ice, in good faith, endeavored to fulfill its contract. We find this argument to be without merit for the reason that in questions of rescission or cancellation of contract, upon the theory of impossibility of performance, the courts have applied the pragmatic test that good intentions or laudable motive are immaterial, and the results of performance are controlling. (7 Fla. Jurisprudence  Contracts, Secs. 149, 175; Bacon v. Green, 36 Fla. 325, 18 So. 870.)
Our affirmance of the correctness of the lower court's ruling, granting the rescission and cancellation of the contract, makes unnecessary discussion of appellant's contention that, Farms having defaulted under the 1961 substituted contract, the parties revert to their positions under the October 1959 contract.
For the foregoing reasons, the decree appealed from is affirmed.
ALLEN, Acting C.J., and SHANNON, J., concur.