WALDEN, Judge.
The trial court granted plaintiff-seller’s motion for summary judgment and ordered the defendant, as purchaser, to specifically perform the terms of their Agreement to Sell Corporate Stock and Pledge of Stock as Security. Defendant appeals. We reverse and remand with instructions to allow plaintiff to amend his complaint, if he wishes, in order to pursue money damages for breach of contract. See 29A Fla.Jur., Specific Performance § 157 (1967).
Plaintiff-Parks was president of a close corporation. He owned 50% of the stock. His wife, Jane Parks, was vice president and secretary, and owned the other 50% of the stock. Defendant, Camp, worked for this corporation as an employee. Over a period of time defendant and plaintiff discussed a sale of plaintiff’s stock to appel *613 lant. Finally, a contract was drawn up which specified that: plaintiff, as seller, was to sell to defendant, as purchaser, 25 shares, a one-half interest in the corporation. The method of payment for this, $50,000, was specified as $1,000 down payment in cash, $150 per week, and, in addition, 5% of the gross revenues of the company every month. Upon receipt of the down payment by plaintiff, he was to assign the stock to defendant. Also plaintiff was to resign as a Director and President of the company and defendant was to be appointed as Director and President. Defendant further agreed to continue working full time with the company until the stock purchase was paid off. Other terms included a transfer to defendant of specified personal property owned by the company, and a transfer of one-half of all the cash and accounts receivable standing on the company’s books on the date plaintiff resigned as president.
The basic problem with the implementation of this contract stems from the fact that plaintiff’s wife, the other half owner of the company, did not sign the agreement. Although only defendant and plaintiff consented to the contract, some of the terms of the contract necessarily involve the participation of the company. The company could only be brought into the agreement through the participation of Jane Parks. Repeating, neither Jane Parks nor the company was a party to the suit or the agreement and so, of course, is in nowise obligated by the agreement or the judgment.
Although space was provided on the contract for the written consent of Jane Parks, she did not execute the contract. Apparently, she does not agree to its terms and would not sign it as written. It appears from the record that Jane Parks had knowledge of the agreement prior to its execution, but did not voice any objection nor consent to its terms. Contemporaneously with the filing of the lawsuit, Mr. and Mrs. Parks instituted dissolution of marriage proceedings.
Defendant has paid all monies owing under the terms of the contract into an escrow account. The stock has not yet been assigned to defendant because Jane Parks took the certificates belonging to her former husband, and has refused to return them.
When the trial court, on plaintiff’s motion, entered summary final judgment in favor of plaintiff it ordered specific performance totally and without limitation.
The trial court’s order of summary judgment found the stock to be freely transferable, and that plaintiff, Parks, at no time represented to defendant that Jane Parks had consented to the agreement. Further, the court held that, since defendant, Camp, had the opportunity to discuss the contract with Jane Parks prior to the execution of the agreement, he could not raise impossibility of performance as an affirmative defense, citing shore Investment Company v. Hotel Trinidad, 158 Fla. 682, 29 So.2d 696 (1947).
Defendant’s first point, saying that summary judgment procedure was inappropriate, is without merit.
Defendant’s Point Two, in its first part, argues that specific performance is not a proper remedy because there exists an adequate remedy at law. This point is not well founded. Generally, “specific performance of a contract concerning stock usually will not be decreed unless damages at law are clearly inadequate, but where justice demands it, a contract to sell stock will be specifically enforced.” Baruch v. W. B. Haggerty, Inc., 137 Fla. 799, 188 So. 797 (1939). In Baruch, however, the court held that where the corporation was a closed one, and where none of the stock had ever been put on the market and had no readily ascertainable market value and where the stock had no fixed value and no *614 par value, the buyer would be entitled to invoke the aid of equity to enforce a contract for sale of stock. Further, the court found the doctrine of mutuality of remedy would entitle the seller to specific performance; the Baruch case was discussed in Jackson Land Co. v. Harbeson, 153 So.2d 826, 827 (Fla.1963):
“[Baruch] announced the rule that specific performance would not ordinarily be granted to enforce the transfer of stock unless the stock was of peculiar value, and could not be bought and sold in the market in which case it could not be readily replaced' or the value easily ascertained. The court held that because of the need for mutuality of remedy a seller of stock could resort to a court of equity for relief against a prospective buyer who defaulted.”
In the Jackson Land Co. case, however, the Supreme Court held that, since the sellers had exercised their rights under a contractual acceleration clause providing for the return of the stock by the escrow agent, they were not entitled to specific performance of the stock purchase contract.
Under the facts in the instant case, the remedy of specific performance is proper under the holding in Baruch, supra, in that here the shares are in a close corporation with the stock not having a readily ascertainable market value.
 The second phase of defendant’s Point Two deals with impossibility of performance and we think it has merit so as to cause reversal. The problem with ordering specific performance of the contract is that several of the terms in the agreement cannot be enforced by the court because they involve performance by a party not involved in this litigation.
In addition to the mentioned transfer and sale of one-half of the stock for a price of $50,000, the agreement contained certain provisos, which are necessarily not within the power of plaintiff-seller to control or deliver. The will and disposition of Jane Parks is the key to this performance. Further, if the court requires plaintiff only to perform those portions of the agreement which he can deliver, the court will be im-permissibly making a new and different contract for the parties. See 29A Fla.Jur., Specific Performance § 155 (1967).
Those critical provisions are:
“3. Parks agrees, upon receipt of payment of $1,000.00 as provided in Paragraph 2(a) above to resign as a Director and President of Company and in his place, Camp will be elected as Director and President of Company. Camp agrees to continue working full time with Company as long as any part of his obligation to Parks remains unpaid. [Emphasis supplied.]
* * * ' * * *
“5. Company agrees not to transfer the stock purchased by Camp or to issue any further stock in Company until such time as Parks has been paid in full. [Emphasis supplied.]
“6. . . . Company represents that it has no claims against Parks and waives, releases, and discharges Parks of and from any liability. [Emphasis supplied.]
“7. Company agrees to transfer to Parks, at no cost to Parks, the 1960 Piper Tri-Pacer presently registered in name of Company and the 1970 Chevrolet Impala two-door hard-top' registered in the name of Company. [Emphasis supplied.]
* ‡ iji * >{c J}C
“9. The parties agree that, in the event Camp is in default under the terms of this agreement for ninety *615 days or more, that Parks, at his option, may:
(a) With the consent of Camp, become the chief operating officer of Company for such periods of time as Camp and Parks shall agree at a weekly salary of $200.00 to be paid by Company in addition to sums required to [sentence unfinished on record copy]. [Emphasis supplied.]
***** *
“11. Parks represents that he is currently drawing $200.00 a week in salary from Company as President and will continue to draw the same until such time as he ceases to be President under the terms of the agreement. At such time as Parks ceases to be President of the Company, Parks shall become the owner of one-half of all cash and bank accounts and accounts receivable of Company. One-half of all cash and bank accounts of the Company will be immediately turned over to Parks and one-half of collections on all accounts receivable, standing on the books of Company as of such date shall be paid to Parks as the same are collected by Company. Company will collect said accounts without cost to Parks. [Emphasis supplied.]
“12. Company books and records shall be available for inspection by Parks or his agents at all reasonable times.” [Emphasis supplied.]
Defendant, because of this situation, argues against specific enforcement on the ground of impossibility of performance.
“ ‘Impossibility of performance’ refers to those factual situations, too numerous to catalog, where the purposes, for which the contract was made, have, on one side, become impossible to perform. ‘Frustration of purpose’ refers to that condition surrounding the contracting parties where one of the parties finds that the purposes for which he bargained, and which purposes were known to the other party, have been frustrated because of the failure of consideration, or impossibility of performance by the other party.” Crown Ice Machine Leasing Co. v. Sam Senter Farms, Inc., 174 So.2d 614, 617 (2d DCA Fla.1965).
See, Con-Dev of Vero Beach, Inc. v. Casano, 272 So.2d 203 (4th DCA Fla.1973), in which the court held:
“Specific performance of a contract for the sale of realty will not be decreed against the vendor [therefore, the party] who is unable to comply with the terms of his agreement . . . The defense of impossibility in this instance would constitute an avoidance or affirmative defense to specific performance under F.R.C.P. 1.140, and therefore should not have been stricken.” (Emphasis supplied.) Id. at 206.
See also Nat’l Industrial Bank of Miami v. Forbes, 270 So.2d 426 (4th DCA Fla.1972). See, 29 Fla.Jur., Specific Performance § 51 (1967).
Plaintiff suggests that defendant is barred from asserting this defense because of the holding in Shore Investment Co. v. Hotel Trinidad, supra. In the Shore case an appellee leased certain property for the purpose of building a new hotel. However, the permit for the construction could not be obtained and the lessor sued for possession. This was not a suit for specific performance and performance of impossible requirements were not adjudged. The court stated:
“We do not think such a defense [impossibility] was available to him [Lessee]. Knowledge of the situation was well known or could have been known by casual inquiry and the dominant rule seems *616 to be that where performance of a contract becomes impossible after it is executed, or if knowledge of the facts making performance impossible were available to the promisor, he cannot invoke them as a defense to performance. The facts offered as a defense here were easily available to respondent. 29 So.2d at 697.
Thus, Shore is somewhat similar to the situation involved here; however, the court did not attempt to specifically enforce the building of the hotel. If, for example, the contract had called for the construction of the new hotel as payment for the lease, the court could not specifically enforce that condition, since the performance was in the hands of a party not involved in the action. Therefore, damages, not specific enforcement of the contract terms, would be called for. Here, impossibility of performance is a proper defense to specific performance; it may not be a defense to a suit for damages, as the facts here are such that the failúre to obtain the consent of Jane Parks, prior to entering into the contract which contained terms for which her consent was necessary, was the fault not only of plaintiff, but also of defendant. See, Caidin v. Poley, 313 So.2d 88 (4th DCA Fla.1975).
The terms of the agreement requiring participation and performance by Jane Parks and the Company are so entwined and of such importance as to render the agreement impossible of specific performance. This being true, the appealed order is in error and must be reversed and the cause remanded with respectful instructions to allow plaintiff to seek money damages for breach of contract. We, of course, express no opinion as to the merits of any claim that plaintiff may make.
Reversed and remanded for further proceedings consistent herewith.
Reversed and remanded.
OWEN, C. J., and MAGER, J., concur.