563 So.2d 767 (1990)
HOME DESIGN CENTER  JOINT VENTURE, a Florida General Partnership, Appellant,
v.
COUNTY APPLIANCES OF NAPLES, INC., a Florida Corporation, Beverly L. Good, and Harry A. Walcott, Appellees.
No. 89-02896.
District Court of Appeal of Florida, Second District.
June 15, 1990.
*768 Daniel A. Gregory of Asbell, Hains, Doyle & Pickworth, P.A., Naples, for appellant.
No appearance for appellees.
ALTENBERND, Judge.
Home Design Center  Joint Venture appeals a final judgment which relieved County Appliances of Naples, Inc., of its obligations as tenant under a commercial lease. The trial court ruled in favor of County Appliances based upon the affirmative defenses of impossibility of performance and frustration of purpose. For the same reasons, the judgment also relieved Mr. Good and Mr. Walcott, the owners of County Appliances, of their obligations as personal guarantors of the lease. County Appliances based its defenses upon its difficulty in obtaining insurance for its retail appliance outlet. We reverse. County Appliances' evidence, as a matter of law, was insufficient to establish these defenses.
County Appliances signed a five-year lease with Home Design Center on January 15, 1986. On the following day, Mr. Good and Mr. Walcott signed personal guarantees. The lease provided a 3,200-square-foot space within a 20,000-square-foot shopping center along the Tamiami Trail in Collier County, Florida. As a condition of the lease, County Appliances agreed to procure and maintain a liability insurance policy which would include Home Design Center as an additional named insured. The lease required that the policy provide $500,000 in bodily injury coverage and $100,000 in property damage coverage.
Like many appliance businesses, County Appliances did not own the merchandise which it displayed. The merchandise was owned by a finance company under a floor plan agreement. Pursuant to the agreement, County Appliances was required to obtain and maintain fire and property insurance on the merchandise.
At the inception of this 1986 lease, County Appliances was already operating two other appliance stores. It had an existing business insurance policy, which provided both liability and property coverage. County Appliances simply added this new store to its existing insurance policy. This policy had been obtained from the Fred S. James Insurance Agency and was issued by American States Insurance Company. American States declined to renew this policy in October 1987. The agent at Fred S. James explained that American States did not wish to renew the property coverage on the business because the value of County Appliances' merchandise exceeded the limits of the policy's property coverage.
County Appliances obtained a comparable insurance policy from Nationwide Insurance Company. A few months later, Nationwide inspected the insured locations. It discovered problems at all three locations. Primarily, Nationwide objected to a pair of large propane tanks which were on a property adjacent to this shopping center. The large tanks had been installed before County Appliances entered into this lease. From Nationwide's perspective, these tanks created an unacceptable fire risk. Accordingly, Nationwide sent County Appliances a notice on March 31, 1988, explaining that the insurance policy would be cancelled in thirty days.
Once County Appliances was notified of the impending cancellation, it began to look for replacement coverage. Its local Nationwide agent could not offer coverage with other standard insurance companies. He did, however, contact one brokerage house which handled surplus lines coverage.[1] Although the record contains no documents concerning his efforts, the Nationwide agent testified that he was not successful in this attempt. County Appliances notified him that it was vacating the leased premises before he made any additional search. In his opinion, if he had searched *769 all the markets, there probably was insurance available for this location at a higher price.
County Appliances also contacted its former agent at Fred S. James. That agency is an independent insurance agency. The agent unsuccessfully attempted to place the risk with several standard insurance companies. The agent explained that he was unsuccessful because only a few companies represented by his agency were writing new insurance business at that time due to the recent downturn in the stock market. He did not check with any companies outside his agency. He did not inquire of any surplus lines company. He had no opinion as to the availability of surplus lines coverage for this location. On April 4, 1988, the agent wrote a letter to County Appliances advising it that he would be unable to offer it any insurance coverage.
The record does not disclose any efforts by County Appliances to obtain insurance after April 4, 1988. Significantly, the Nationwide cancellation letter is dated Thursday, March 31, 1988. Assuming the letter was received on that same date, it appears that County Appliances spent two business days in its search for insurance coverage before it abandoned the task as impossible. It did not contact any other insurance agencies in Collier County. It did not make any effort to obtain insurance through any of the large national or international insurance brokers. There is no evidence that it contacted the Office of the Insurance Commissioner for assistance. Even though other tenants in the shopping center had insurance with other insurance companies, there is no evidence that County Appliances contacted any of those insurance companies. Instead, the record contains a letter sent by County Appliances to Home Design Center on April 6, 1988, which confirms a "verbal request of approximately forty-five days ago" to terminate the lease because the business was sustaining losses at this location which might result in bankruptcy. Although that letter lists the impending insurance cancellation as one of County Appliances' problems, that problem had arisen only seven days earlier.
County Appliances vacated this location in May 1988. It obtained a new insurance policy with Nationwide for its two remaining locations. When Home Design Center sued for breach of the lease and for a judgment on the guarantees, County Appliances and its principals successfully relied on the interrelated doctrines of impossibility of performance and commercial frustration.
At the outset of the analysis of these two defenses, we note that the lease specifically obligates the tenant to obtain liability insurance. The lease, however, does not mention the tenant's agreement with a third party to maintain sufficient property insurance if the tenant intended to operate its business on a floor plan agreement. The lease does not even mention the tenant's intention to use a floor plan agreement.
The future availability of contractually required insurance at a reasonable price is clearly a business risk. The parties could have shifted the risk of expensive or unavailable insurance for either the liability coverage or the property coverage from the tenant to the landlord. They chose not to shift this risk by the terms of the contract. Thus, the issue in this case is whether the tenant is entitled to shift these risks to the landlord under principles of law which would override the allocation of risks in the parties' contract.
Although the doctrines of impossibility of performance and commercial frustration are "undoubtedly in [the] process of evolution"[2] and have been applied with "increasing liberality,"[3] they should be employed with great caution if the relevant business risk was foreseeable at the inception of the agreement and could have been the subject of an express contractual agreement. As a general rule, a contract is not invalid, nor is the obligor discharged from its binding effect, because the contract *770 turns out to be difficult or burdensome to perform. City of Tampa v. City of Port Tampa, 127 So.2d 119 (Fla. 2d DCA 1961).
County Appliances failed to prove the defense of impossibility of performance. Examining first County Appliances' difficulty in obtaining liability insurance as required by the lease, County Appliances failed to present sufficient evidence that it could not obtain liability insurance. The risk created by the propane tanks related primarily to property insurance rather than to liability insurance. Assuming that a two day search for insurance was sufficient to support a defense of impossibility, County Appliances presented no evidence that it was unable to obtain a policy providing only liability insurance. Thus, the trial court lacked substantial competent evidence to support a conclusion that it was impossible for County Appliances to perform its obligations under the lease.
Examining second County Appliances' difficulty in obtaining property insurance under its floor plan agreement, County Appliances failed to prove that it was "impossible" for it to perform its purpose under the lease. "`Impossibility of performance' refers to those factual situations, too numerous to catalog, where the purposes, for which the contract was made, have, on one side, become impossible to perform." Crown Ice Machine Leasing Co. v. Sam Senter Farms, Inc., 174 So.2d 614, 617 (Fla. 2d DCA), cert. denied, 180 So.2d 656 (Fla. 1965). In this case, County Appliances' purpose was to operate an appliance store. That purpose was known to Home Design Center. Accepting County Appliances' contention that it could not obtain property insurance as required under its floor plan agreement, it could still operate an appliance store without floor plan financing. Admittedly, such an operation would have required more capital than County Appliances apparently possessed, but that economic difficulty did not render its purpose "impossible."
County Appliances also failed to prove a prima facie defense of commercial frustration. "`Frustration of purpose' refers to that condition surrounding the contracting parties where one of the parties finds that the purposes for which [it] bargained, and which purposes were known to the other party, have been frustrated because of the failure of consideration, or impossibility of performance by the other party." Crown Ice, 174 So.2d at 617.[4] County Appliances' purpose was not frustrated by a failure of consideration or an impossibility of performance by Home Design Center. Even under theories which permit a broader application of the doctrine of commercial frustration, the defense is not available concerning difficulties which could reasonably have been foreseen by the promisor at the creation of the contract. Valencia Center, Inc. v. Publix Super Markets, 464 So.2d 1267 (Fla. 3d DCA), review denied, 475 So.2d 696 (Fla. 1985); 6 A. Corbin, Contracts § 1333 (1962); 17A C.J.S. Contracts § 463(2)(b) (1963). Although County Appliances may not have anticipated future problems with its insurance company or with its floor plan financier, it did not present substantial competent evidence to establish that such basic business risks were matters which it could not have foreseen at the time it negotiated the terms of this lease.
At trial, County Appliances and its principals did not cite any precedent in which a tenant was permitted to escape its obligations under a lease because of difficulties in obtaining insurance. They have not filed a brief in this appeal. This court's independent research has not located a case that supports County Appliances' position. See generally Charing Cross Corp. v. Comfed Mortgage Co., 25 Mass. App. Ct. 924, 516 N.E.2d 1178 (1987) (unavailability of private mortgage insurance is not impossibility); 6 A. Corbin, Contracts § 1356 *771 (1962). While we do not hold that severe difficulties in obtaining insurance could never create a valid defense under the doctrines of impossibility of performance or frustration of purpose, County Appliances' insurance difficulties did not establish a valid defense in this case.
Reversed and remanded.
DANAHY, A.C.J., and LEHAN, J., concur.
NOTES
[1] Under the Surplus Lines Law, surplus lines coverages are those coverages which are unavailable from authorized insurers and thus may be procured from unauthorized insurers subject to certain conditions. § 626.915, Fla. Stat. (1987).
[2] 18 S. Williston, A Treatise on the Law of Contracts § 1931 (3d ed. 1978).
[3] 6 A. Corbin, Contracts § 1320 (1962).
[4] In Crown Ice, the party seeking to rescind the contract was the purchaser of ice. It argued that the ice company's machinery could not perform the negotiated task. Thus, the commercial frustration in that case was caused by the other party to the contract and not by a third party on a collateral agreement. It is possible that the court would have stated the doctrine in broader terms if the facts of the case had so required.