

FILED

May 10 2023, 9:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas A. Brodnik
McNeely Law LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Alexander W. Robbins
The Law Office of Alex Robbins
Bedford, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Terrence Brodnik,
*Appellant-Plaintiff,*

v.

Cottage Rents LLC,

*Appellee-Defendant*.

May 10, 2023

Court of Appeals Case No.
22A-SC-1103

Appeal from the Hendricks
Superior Court

The Honorable Tammy Somers,
Judge

Trial Court Cause No.
32D01-2008-SC-929

**Opinion by Judge Kenworthy**
Judge Bradford concurs.
Judge Mathias dissents with separate opinion.

**Kenworthy, Judge.**

## Case Summary

[1] In 2019, Terrence Brodnik ("Vacationer") planned a Florida vacation for late

March 2020. After reserving the "Salt Air Cottage" from Cottage Rents LLC

("Rental Company"), Vacationer prepaid more than $6,000. A few weeks ahead of the planned vacation, the COVID-19 pandemic emerged; then five days before the planned arrival date, Governor Holcomb issued an Executive Order prohibiting all but essential travel. It is undisputed the order prohibited Vacationer from traveling to the Florida vacation home. It is also undisputed that, under the rental agreement, Florida law governs this contract dispute.

[2] Ultimately, Vacationer sued Rental Company in an Indiana small claims court, alleging Rental Company refused to refund the prepaid fee. In seeking a refund, Vacationer argued, among other things, the contract was unenforceable because of the Florida doctrine of impossibility. The small claims court held a bench trial and entered judgment for Rental Company. The court implicitly found the doctrine of impossibility did not apply, noting Vacationer "failed to comply with the . . . contract." *Appellant's App. Vol. 2* at 8. Vacationer appeals.

[3] Applying Florida law, we address the following dispositive issue:

> Does Florida's common-law doctrine of "impossibility" apply under the circumstances, rendering the vacation rental agreement unenforceable against Vacationer, who was prohibited from vacationing in Florida because of the Executive Order?

[4] Concluding the doctrine applies and therefore Vacationer had a right to rescind the contract, we remand for the trial court to balance the equities and determine what, if any, restitution is due to Vacationer under the circumstances.[1]

## Facts and Procedural History

[5] In May 2019, Vacationer reserved a Florida home for a vacation starting on March 28, 2020. Under the contract with Rental Company, the rent and security deposit totaled $6,663.69. By March 2020, Vacationer had paid in full.

[6] On March 13, President Trump declared a national emergency due to the COVID-19 pandemic. And on March 23, Governor Holcomb issued an Executive Order prohibiting all but essential travel. The parties do not dispute the Executive Order prohibited Vacationer from traveling to Florida as planned.

[7] At some point, Vacationer contacted the owner of Rental Company, Robert Toler, Jr., about "what would happen" if Vacationer was "unable to travel due to the pandemic[.]" *Tr. Vol. 2* at 9. Toler offered Vacationer "a replacement week . . . within the next twelve (12) months." *Id.* Toler also offered to discount a "certain week" by $2,500. *Id.* at 25. Vacationer declined, explaining that, because of his family's incompatible schedules, there "wasn't really an option in getting there within the next" year. *Id.* at 9. Vacationer and Toler

---

[1] Because this issue is dispositive, we do not address any other issue.

exchanged a "number of communications[.]" *Id.* Eventually, on the day before the planned arrival, Vacationer told Toler he would not be traveling to Florida.

[8] In August 2020, Vacationer sued Rental Company in small claims court, seeking a refund. It is undisputed Florida law governs the contract dispute. *See Ex.* at 6 (contract paragraph 15). It is also undisputed that, apart from containing a "Hurricane or Storm Policy," *see id.* at 5, the contract does not address or attempt to allocate liability for an Act of God impeding performance.

[9] In seeking a refund, Vacationer argued the rental agreement was unenforceable due to—among other things—the Florida defense of impossibility. Vacationer argued, in the alternative, that Rental Company breached the rental agreement.

[10] At trial, Rental Company pointed out Vacationer could have received a refund under Section 11 of the contract, which addresses cancellation. That provision states Vacationer would receive a full refund of rent, less a $250 service fee, if (1) Vacationer gives "prior written notice" to Rental Company, and (2) Rental Company is able to re-rent the home. *Id.* Rental Company noted Vacationer waited until March 27—one day before the scheduled rental period—to tell Toler he would not be traveling to Florida. Toler opined that, had Vacationer given additional notice, the home "would've been re-rented[.]" *Tr. Vol. 2* at 27.

[11] Vacationer argued the case presented a "unique situation" in that there had not been a pandemic "since 1918." *Id.* at 33. Vacationer asserted "acts of God, impossibility[,] and frustration of purpose are well[-]recognized doctrines in Florida," and those doctrines "render a contract unenforceable." *Id.* at 35.

Vacationer stated: "I don't know how this COVID pandemic could've been considered anything other than an act of God." *Id.* At bottom, he argued the notice provisions did not apply because, under the circumstances, the contract was unenforceable and Vacationer was entitled to a refund of the prepaid fee.

[12] The small claims court entered judgment for Rental Company. In its written judgment, the court implicitly found the contract was enforceable: "Plaintiff failed to comply with the terms of the contract." *Appellant's App. Vol. 2* at 8.

[13] Vacationer now appeals. He argues the court erred in (1) determining the contract was enforceable or, in the alternative, (2) finding Vacationer breached.

## Discussion and Decision

[14] We begin by addressing Vacationer's claim the contract is unenforceable under Florida law because "the contract's performance was rendered impossible[.]" *Appellant's Br.* at 8. He argues the theory of impossibility applies because the pandemic led to an Executive Order prohibiting him from traveling to Florida.

[15] Under Florida law, "[r]escission or cancellation of a contract may be obtained on the ground of 'impossibility of performance[.]'" 11 Fla. Juris. 2d. Cancellation § 28 (2023). "'Impossibility of performance' refers to those factual situations where the purposes for which the contract was made have, on one side, become impossible to perform[.]" *Id.; see also Harvey v. Lake Buena Vista Resort, LLC*, 568 F. Supp. 2d 1354, 1367 (M.D. Fla. 2008). "In an action for the rescission or cancellation of a contract upon the theory of impossibility of performance, the fact that the defendant, in good faith, endeavored to fulfill its

contract is immaterial[.]" 11 Fla. Juris. 2d. Cancellation § 28 (2023); *see also*

*Crown Ice Mach. Leasing Co. v. Sam Senter Farms, Inc.*, 174 So. 2d 614, 619 (Fla.

Dist. Ct. App. 1965) (declining to address any contention the defendant had

"good intentions or laudable motive"). Put differently, the proper inquiry is not

whether any party diligently tried to perform, but whether the doctrine of

impossibility applies under the circumstances. *See Crown*, 174 So. 2d at 619.

[16] Impossibility is a "judicially created" doctrine, *Cook v. Deltona Corp.*, 753 F.2d

1552, 1557 (11th Cir. 1985), susceptible to application as a matter of law, *see,*

*e.g.*, *Harvey*, 568 F. Supp. 2d at 1367 (impossibility doctrine did not apply);

*Marathon Sunsets, Inc. v. Coldiron*, 189 So. 3d 235, 236 (Fla. Dist. Ct. App. 2016)

(impossibility doctrine applied). Scenarios implicating impossibility include

"'Acts of God' and governmental action[.]" *Harvey*, 568 F. Supp. 2d at 1367.

The doctrine ultimately turns on foreseeability. *See, e.g.*, *id.* In other words:

> [C]hange is what impossibility is about. As Professor Gilmore
> put it, [impossibility] arises as a defense when "the real world has
> in some way failed to correspond with the imaginary world
> hypothesized by the parties to the contract." G. Gilmore, *The*
> *Death of Contract* 81 (1974). By recognizing impossibility as a sort
> of 'escape hatch' from the self-made chamber of contractual duty,
> the courts have recognized that absolute contractual liability is
> economically and socially unworkable. Impossibility
> [accommodates] the tension between the changes a party
> bargains to avoid and the changes, unbargained for and radical,
> that make enforcement of the bargain unwise.
>
> Thus, it seems . . . the most profitable approach to an
> impossibility claim is not to pass on the relative difficulty caused

by a supervening event, but to ask whether that supervening event so radically altered the world in which the parties were expected to fulfill their promises that it is unwise to hold them to the bargain. Ultimately the issue is whether the change was foreseeable. This is the rule in Florida.

*Cook*, 753 F.2d at 1558; *cf. Harvey*, 658 F. Supp. 2d at 1367–68 (determining impossibility did not apply when premised on the effect of (a) hurricanes the year before signing and (b) a regulatory change posted well before signing).

[17] As to circumstances arising from the COVID-19 pandemic, in *McGuire v. Intelident Sols., LLC*, the court declined to apply Florida's theory of impossibility when the parties entered into the pertinent agreement in June 2020, "mid-pandemic." No. 8:18-cv-02995-T-23SPF, 2021 WL 3195145, at *3 (M.D. Fla. May 12, 2021). The court reasoned that, by June 2020, the defendants could have foreseen pandemic-related financial risks, and the defendants "could have negotiated the inclusion of a provision" concerning those financial risks. *Id.*

[18] Turning to the case at hand, Vacationer planned the Florida vacation well before the pandemic. About one week before the vacation, Governor Holcomb issued an Executive Order that prohibited Vacationer from traveling to Florida.

[19] In some cases, unforeseeable events—although inconvenient—might not render performance impossible. *See, e.g.*, *In re Cinemex USA Real Estate Holdings, Inc.*, 627 B.R. 693, 699–70 (Bankr. S.D. Fla. 2021) (determining a movie theater could not rely on an Act of God to excuse nonpayment of rent after June 5, 2020; by that point, the Florida Governor had lifted a COVID-related shut-

down order and allowed movie theaters to operate at partial capacity, but the movie theater had declined to re-open). Here, however, the Executive Order made it impossible for Vacationer to derive any benefit from the bargain.[2]

On appeal, Rental Company argues Vacationer cannot claim impossibility because Vacationer prepaid for the vacation. According to Rental Company: "Once payment was rendered, [Vacationer's] performance was already complete" and "what [he] experienced was not impossibility of performance, but a severe inconvenience of not being able to travel in order to reap the benefit that his performance by payment had guaranteed." *Appellee's Br.* at 9.

We disagree. The impossibility doctrine addresses "the tension between the changes a party bargains to avoid and the changes, unbargained for and radical, that make enforcement of the bargain unwise." *Cook*, 753 F.2d at 1558.

At bottom, the Executive Order amounted to an unforeseeable supervening event that "radically altered the world in which the parties were expected to fulfill their promises[.]" *Id.* Thus, we conclude the doctrine of impossibility applies under the circumstances. *Cf. Cinemex*, 627 B.R. at 698–99 ("Clearly the

---

[2] In applying the doctrine of impossibility, the dissent looks to the cancellation provisions in the contract. Yet those provisions formed part of an overall bargain for the rental of a Florida vacation home—a deal struck in May 2019 with the basic understanding Vacationer could lawfully enjoy the "Salt Air Cottage" in March 2020. Unforeseeably, the tide changed; the pandemic led to an Executive Order prohibiting interstate travel. In other words, "the real world . . . in some way failed to correspond with the imaginary world hypothesized by the parties to the contract." *Cook*, 753 F.2d at 1558 (quoting G. Gilmore, *The Death of Contract* 81 (1974)). That is why the doctrine of impossibility applies here, permitting Vacationer to rescind the contract regardless of any ancillary term contained in the bargain; the foundation unforeseeably shifted, resulting in "changes, unbargained for and radical, that make enforcement of the bargain unwise." *Id.*

events that caused the shutdown were not foreseeable."); *Appellee's Br.* at 13 (asserting "an act of God prevented [Vacationer] from traveling to take possession of the rental property" but his "indecisiveness and inaction" were the proximate cause of any loss). And because the doctrine of impossibility applies, Vacationer may avoid the contract, including all provisions concerning cancellation. *See, e.g.*, 11 Fla. Juris. 2d. Cancellation § 28 (2023) (contemplating "an action for the rescission or cancellation of a contract upon the theory of impossibility of performance"). We therefore conclude the small claims court erred in entering judgment for Rental Company on the basis that Vacationer "failed to comply with the terms of the contract." *Appellant's App. Vol. 2* at 8.

Although impossibility applies, Vacationer does not automatically receive a refund. Rather, under the circumstances, a Florida court will "grant rescission and remand . . . for a determination of what if any restitution is due[.]" *E.B. Sherman, Inc. v. Mirizio*, 556 So. 2d 1143, 1144 (Fla. Dist. Ct. App. 1989) (per curiam). That is because the defendant "may be entitled to retain all or part of the money [it] received . . . for equitable reasons." *Id.* Taking this approach, we reverse the judgment, grant rescission, and remand for a decision on restitution.

## Conclusion

Applying Florida law and concluding the doctrine of impossibility applies, we reverse the judgment, order rescission of the contract, and remand with instructions for the trial court to balance the equities and determine restitution.

Reversed and remanded.

Bradford, J., concurs.

Mathias, J., dissents with separate opinion.

**Mathias, Judge, dissenting.**

I respectfully disagree that Brodnik's performance under the contract was rendered impossible, as a matter of law, due to the Governor's stay-at-home order. When Brodnik entered into the rental contract, he agreed to the cancellation policy, which provided in relevant part that he could terminate the agreement "at any time, upon prior written notice to Cottage Rents LLC." Ex. p. 5. The agreement also provided that, in the event of his termination, Brodnik would be charged for the rental unless Cottage Rents could re-rent the property during the rental week.

It is undisputed that Brodnik did not give written notice to Cottage Rents that he was terminating the agreement. And he waited until one day before the rental period to tell Toler that "he was not coming down." Tr. p. 25. During trial, Toler testified that, had Brodnik complied with the terms of the agreement and provided written notice of the cancellation prior to the rental week, he "believe[d] that home would've been re-rented" Tr. p. 27.

Our standard of review in small-claims cases is well settled. Small-claims court judgments are "subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). Under Indiana Trial Rule 52(A), the clearly erroneous standard applies to appellate review of facts determined in a bench trial, with due regard given to the opportunity of the trial court to assess witness credibility. This deferential standard of review is particularly important in small-claims actions, where trials are designed to speedily dispense justice by

applying substantive law between the parties in an informal setting. *Vance v. Lozano*, 981 N.E.2d 554, 557 (Ind. Ct. App. 2012).

[4] Cottage Rents presented evidence that, despite the Governor's order, Brodnik had the ability to comply with the cancellation policy but failed to do so. In other words, the evidence shows that Brodnik's performance was not rendered impossible. The small claims court, sitting as the factfinder, clearly credited Toler's testimony and found that Brodnik had "failed to comply with the terms of the contract." Appellant's App. Vol. 2, p. 8. Accordingly, I would hold that the court did not err as a matter of law when it declined to apply the impossibility doctrine here.