[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-13701

_____

D.C. Docket No. 8:14-cv-02067-EAJ


HILLSBOROUGH COUNTY,
a political subdivision of the State of Florida,
JORGE L. DOMINGUEZ,
as Personal Representative of the Estate of Darcia Dominguez,

Plaintiffs - Appellees,

versus

STAR INSURANCE COMPANY,
a Michigan Corporation,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(February 3, 2017)

Before MARTIN and JORDAN, Circuit Judges, and COOGLER,[*] District Judge.

JORDAN, Circuit Judge.

Darcia Dominguez died from injuries sustained in an automobile accident with a Hillsborough County employee in February of 2010. Jorge Dominguez, the personal representative of Ms. Dominguez's estate, filed a wrongful death suit against Hillsborough County in state court, and that action, as far as we know, is still pending. This federal diversity case involves an insurance dispute between the County, Mr. Dominguez, and Star Insurance, the County's excess carrier.

We confront an issue of first impression under Florida law—the interplay between the limited waiver of sovereign immunity set forth in Fla. Stat. § 768.28(5) and the language of the self-insured retention limit (SIRL) contained in an endorsement to the excess liability policy issued to the County by Star. One Florida appellate court has acknowledged a virtually identical issue but declined to resolve it given the case's procedural posture. *See State Nat'l. Ins. Co. v. Robert*, 71 So. 3d 238, 241 (Fla. 4th DCA 2011).

The question, as best as we can briefly explain it, is whether the County and Mr. Dominguez can settle the estate's claim for the sum of $2.35 million—with the County paying its SIRL of $350,000 and Star purportedly paying the remaining $2

---

[*] The Honorable L. Scott Coogler, United States District Judge for the Northern District of Alabama, sitting by designation.

million (the policy limits)—without Star's consent but subject to the Florida Legislature approving a special claims bill for the $150,000 "gap" between the $200,000 sovereign immunity cap established by § 768.28(5) and the $350,000 SIRL.

The district court, exercising diversity jurisdiction and ruling on cross-motions for summary judgment that the parties submitted without the benefit of discovery, held that any requirement that the Florida Legislature pass a claims bill for the "gap" amount before coverage is triggered under the policy frustrates the purpose of the County's contract with Star. But it also ruled that the County cannot unilaterally settle the estate's claim for an amount within the policy limits without Star's consent. *See* D.E. 55 at 7-13. *See also Hillsborough Cnty. v. Star Ins. Co.*, No. 8:14-CV-2067-T-EAJ, 2015 WL12765535 (M.D. Fla. June 24, 2015) (denying motion for reconsideration). In granting Mr. Dominguez's motion for entry of judgment, the district court clarified that, in concluding that the County could not settle without Star's consent, it necessarily ruled that, should Star consent, the County could satisfy its SIRL without a claims bill by the Legislature. *See* D.E. 82 at 3.

Two of the three parties before us are unhappy with the district court's ruling. Star argues that the district court committed reversible error by ruling, pursuant to a frustration of purpose theory, that the requirement of a special claims

3

bill is unenforceable.  It also maintains that the County breached the terms of the policy by entering into a settlement without its consent.  The County says that the district court did not go far enough, and asks us to hold that it does not need Star's consent to settle the claim with the estate.  Mr. Dominguez—who would be the other party to a settlement with the County—oddly calls for affirmance of the district court's judgment, which would mean that—absent a jury verdict in his favor—he and the County need Star's consent to consummate their settlement.

If this sounds like a mess, that is because it is.

## I

We begin with the text of § 768.28(5) as it existed at the time of the deadly accident, because it provides the backdrop for the parties' dispute.  *See Hattaway v. McMillan*, 903 F.2d 1440, 1444 n.3 (11th Cir. 1990) (explaining that courts apply the Florida sovereign immunity provisions in effect at the time a cause of action accrues).  We then turn to the language of the excess policy issued by Star, the case's procedural history, the parties' contentions, and the district court's rulings.

## A

In February of 2010, § 768.28(5) read in relevant part as follows:

4

The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period before judgment.  Neither the state nor its agencies or subdivisions shall be liable to pay a claim or judgment by any one person which exceeds the sum of $100,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state or its agencies and subdivisions arising out of the same incident or occurrence, exceeds the sum of $200,000.  **However, a judgment or judgments may be claimed and rendered in excess of these amounts and may be settled and paid pursuant to this act up to $100,000 or $200,000, as the case may be; and that portion of the judgment that exceeds these amounts may be reported to the Legislature, but may be paid in part or in whole only by further act of the Legislature.**  *Notwithstanding the limited waiver of sovereign immunity provided herein, the state or an agency or subdivision thereof may agree, within the limits of insurance coverage provided, to settle a claim made or a judgment rendered against it without further action by the Legislature, but the state or agency or subdivision thereof shall not be deemed to have waived any defense of sovereign immunity or to have increased the limits of its liability as a result of obtaining insurance coverage for tortious acts in excess of the $100,000 or $200,000 waiver provided above[.]*

(emphasis added).[1]

The sentence in bold provides that any judgment or settlement above the sovereign immunity waiver is payable, in whole or in part, only through a special claims bill approved by the Florida Legislature.  *See Wallace v. Dean*, 3 So. 3d 1035, 1041 n.9 (Fla. 2009).  The sentence in italics allows a municipality like the

---

[1] In April of 2010, the Florida Legislature amended § 768.28(5) to increase the sovereign immunity caps to $200,000/$300,000 for claims arising on or after October 1, 2011.  *See* 2010 Fla. Sess. Law Serv., Ch. 2010-26 (C.S.S.B. 2060), §§ 1-2.  All references in this opinion to § 768.28(5), unless otherwise noted, are to the version in existence in February of 2010.  Given the way this case was litigated in the district court, we assume that the County's sovereign immunity cap was $200,000.

County to purchase liability insurance and to settle a claim within the limits of coverage (and above the stated sovereign immunity caps) without further action by the Legislature. *See Mich. Millers Mut. Ins. Co. v. Bourke*, 607 So. 2d 418, 421-22 (Fla. 1992); *Tramel v. Bass*, 707 So. 2d 847, 848 (Fla. 1st DCA 1998). But it also states that the purchase of insurance does not waive the defense of sovereign immunity.

**B**

The County purchased an excess liability insurance policy (including excess automobile coverage) from Star for the period spanning from October 1, 2009, to October 1, 2010. The policy, which cost the County $527,360, has a $2 million limit for each accident or occurrence, as well as a $350,000 SIRL. *See* Public Entity Excess Liability Policy, D.E. 18-1, at Declarations Page.

The policy states that Star will "pay all sums" that the County "legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" *Id.* at § II.A. It also provides that the County cannot assume any obligation, make any payment, or incur any expense "without [Star's] consent, except at [the County's] own cost," and requires the

6

County to cooperate with Star "in the investigation, settlement or defense of the claim or 'suit.'" *Id.* at § IV.A.2.b(1) & (3).

The SIRL endorsement, which applies to automobile excess coverage, states that the County, "[i]n consideration of the premium charged and as a condition to the issuance and continuation of the [p]olicy," agrees to be responsible, "per occurrence," for the first $350,000 in "allocated costs and expenses of investigation, defense, negotiation and settlement." *Id.* at SIRL Endorsement, ¶ 1. Star's "limit of liability [of $2 million per occurrence] shall apply solely in excess" of the County's SIRL. *Id.*

Paragraph 4 of the SIRL endorsement provides that the County shall not incur any costs or expenses, "other than for immediate first aid to others, . . . except at [its] own cost, . . . without the written consent" of Star. *Id.* at ¶ 4. That same paragraph requires the County to provide an "adequate defense and investigation" of any action, and "accept any reasonable offer or settlement" within the $350,000 SIRL. *Id.* at ¶ 4.A-B. If the County fails to comply with any of the provisions of paragraph 4, Star "shall not be liable for any damages or costs or expenses[.]" *Id.* at ¶ 4.

## C

Mr. Dominguez, in an attempt to have a Florida court determine the nature and extent of coverage under Star's excess policy, asserted a declaratory judgment claim against the County and Star in his state-court wrongful death action. The state trial court denied Star's motion to dismiss, but in June of 2014 the Second District granted Star's petition for certiorari and reversed, holding that Mr. Dominguez—who was not an insured under Star's excess policy—had not satisfied Florida's non-joinder statute, Fla. Stat. § 627.4136(1), because he had not yet obtained a judgment against, or settled with, the County. *See Star Ins. Co. v. Dominguez*, 141 So. 3d 690, 691-92 (Fla. 2d DCA 2014). So no Florida Court has addressed Star's obligations under the policy.

In its amended complaint for declaratory relief in federal court, the County alleged (and Star admitted) that Ms. Dominguez had died as a result of injuries sustained in an automobile accident with a County employee (though the complaint was silent about who was at fault and Star said it was without knowledge as to the details of the accident); that Mr. Dominguez, as administrator of Ms. Dominguez's estate, had filed a wrongful death action in state court; that the case was then set for trial in February of 2015; and that Star had issued a reservation of rights letter in July of 2014. *See* Am. Compl., D.E. 18, at ¶¶ 5, 15; Answer and Defenses, D.E. 28, at ¶¶ 5, 15. In its reservation of rights letter, which was attached to the

8

amended complaint, Star took the position that it was only obligated to pay those sums that the County "legally must pay," and that under § 768.28(5) the County had sovereign immunity for any sums over $200,000 absent an act of the Florida Legislature. Because the Florida Legislature had not taken any action (like passing a special claims bill) that would make the County liable for (or allow the County to pay) any claim over $200,000, and because the County had not exhausted (and could not yet exhaust) its $350,000 SIRL, Star asserted that its excess coverage under the policy had not been triggered. *See* Am. Compl., D.E. 18, Ex. 2.

The County also alleged in its amended complaint that the policy language prohibited it from settling Mr. Dominguez's action for any amount exceeding its $350,000 SIRL without Star's consent. It had asked Star for its consent to a settlement with Mr. Dominguez over the amount of $350,000, but Star had refused to agree. Star admitted both of these allegations. *See* Am. Compl., D.E. 18, at ¶¶ 16-17; Answer and Defenses, D.E. 28, at ¶¶ 16-17.

The amended complaint contained other significant factual allegations by the County, but Star denied those allegations in its answer. For example, the County alleged (and Star denied) that Mr. Dominguez had made a settlement demand on the County for an amount "far in excess" of the $350,000 SIRL. *See* Am. Compl., D.E. 18, at ¶ 19; Answer and Defenses, D.E. 28, at ¶ 19. It also alleged (and Star denied) that Star had "been made aware of the reasonable possibility of a verdict in

9

the [wrongful death case] which far exceeds the amount of the coverage limits [in the policy]." *See* Am. Compl., D.E. 18, at ¶ 41; Answer and Defenses, D.E. 28, at ¶ 41.

The County asked that the district court interpret § 768.28(5) "as juxtaposed against" the language in Star's excess policy. D.E. 18 at ¶ 12. The County requested a ruling that § 768.28(5) gave it *statutory* authority to settle the action filed by Mr. Dominguez within the limits of the excess policy without Star's consent. *Id*. at ¶ 24. According to the County, such a settlement did not void the policy language because (a) if Star could "veto a settlement," it "would be able to thwart the public policy favoring settlement of disputes," and the language in § 768.28(5) allowing settlement of a claim within the limits of insurance coverage would have no effect; and (b) the policy language requiring that the County exhaust its $350,000 SIRL—an amount over the $200,000 sovereign immunity cap—constituted an "illusory, illegal condition" that was void as a matter of law. *Id*. at ¶ 26-28.

The County also argued that, contrary to Star's position, there was no need for the Florida Legislature to pass a special claims bill in order to trigger excess coverage under the policy. According to the County, if Star's position were upheld then coverage would only be triggered if Mr. Dominguez obtained a judgment over the $350,000 SIRL and if the Legislature then passed a special claims bill allowing

10

the County to pay its SIRL of $350,000, which exceeds the $200,000 sovereign immunity cap. *Id*. at ¶ 35.

In its prayer for relief, the County asked the district court to declare that it was allowed to settle the claim by Mr. Dominguez for an amount over $350,000 but within the policy limits without Star's consent and without a special claims bill by the Legislature; that such a settlement would not void the policy; that Star was required to pay the excess insurance amount set forth in the policy in satisfaction of the settlement; and that the policy language requiring the County's payment of the SIRL was void and illusory and should be severed from the policy because § 768.28(5) precluded such a payment. *Id*. at 10.

## D

In their joint case management report, the parties told the district court that the issues presented were legal in nature and that as a result "no discovery [wa]s needed." *See* D.E. 27 at 1. Those representations, as we later explain, would turn out to be mistaken.

About three weeks after the entry of the scheduling order, the County filed a motion for summary judgment. *See* D.E. 30. Attached to the motion were several letters which referred to a proposed settlement agreement "in principle" between Mr. Dominguez and the County. Neither the motion nor the letters set forth the

11

precise terms of the proposed settlement, except to note that the County would, subject to Star's consent, satisfy the $350,000 SIRL, and that the settlement was within the limits of Star's excess policy.  The County's Board of Commissioners, according to the motion, would soon vote on the proposed settlement.

The County's argument was short and to the point.  Given the language of § 768.28(5), the County could settle Mr. Dominguez's wrongful death claim within the limits of the excess policy without Star's consent.  Under Florida law, it argued, Star had to act in the County's best interests and had to give "fair consideration" to the proposed settlement.  The County broadly asserted that "Star has a legal duty to settle the [wrongful death action] for an amount within the policy limits," and "has no valid authority, as a matter of law, to 'veto' a settlement to which the parties in [that action] have agreed."  But it failed to provide any evidence on critical factual issues such as who was at fault in the accident that took Ms. Dominguez's life, why its own liability was likely or certain, what the damages were expected to be, or why the proposed settlement (the terms of which were still not specified) was reasonable.

Mr. Dominguez filed his own motion for summary judgment.  *See* D.E. 37. Like the County, Mr. Dominguez argued that § 768.28(5) trumped the language in Star's policy.  But, unlike the County, Mr. Dominguez asserted that the statute allowed the County to settle his claim within the limits of the policy if it obtained a

12

special claims bill from the Florida Legislature for the $150,000 "gap" between the $200,000 sovereign immunity cap and the $350,000 SIRL.  Mr. Dominguez also claimed that the policy language Star was relying on (the "legally must pay" language) and the SIRL were at best ambiguous and should therefore be construed against Star.  As Mr. Dominguez saw things, it was useless for the County to have excess insurance if it could not use that insurance to settle a claim.

Star opposed the motions of the County and Mr. Dominguez and filed its own cross-motion for summary judgment.  *See* D.E. 38, 50.  Attached to Star's summary judgment motion was an agenda item on the consent calendar for a County Commission meeting scheduled for January 7, 2015.  The item was a proposal to authorize the County Attorney's Office to "propose" a $2.35 million settlement offer in the wrongful death action comprised of three payments: the County would pay $200,000 out of its self-insurance general liability fund; an additional $150,000 would be "paid by the County, if approved by the Legislature in a [c]laims [b]ill"; and Star would pay $2 million.  The staff recommendation for the consent item explained that, if Star rejected the proposed settlement, the case would be tried "to a verdict which the County Attorney's Office projects, based on focus group studies, will exceed the amount of the proposed settlement offer." *See* D.E. 38, Ex. C, at 1.  The background section of the agenda item noted that

13

Star had refused to offer any policy proceeds and was likely "to veto the proposed settlement." *Id.* at 2.

Star's summary judgment motion, like the County's, was devoid of evidence. It said nothing about the cause of deadly accident, the likelihood of the County's liability, the calculation of damages, or the reasonableness of the proposed settlement.

In a supplemental filing, Star submitted the affidavit of Michael McNabb, the County's risk and safety manager. In that affidavit, which had first been filed in a separate case in federal court, Mr. McNabb stated that he was familiar with the policies issued to the County by Star and by State National Insurance. Those policies, according to Mr. McNabb, had a $350,000 SIRL, and because of the SIRL "the County receive[d] a discount on the overall policy premium." D.E. 52, Ex. 1, at ¶ 12.

According to Star, the district court had to enter summary judgment in its favor as a matter of law for a number of reasons. First, coverage under the excess policy is triggered only when the County is legally obligated to pay more than $350,000, and without a special claims bill from the Florida Legislature the County had no legal obligation to pay any sum over $200,000, including the $150,000 "gap" amount. In fact, the County had sovereign immunity for any amount over

14

$200,000. Second, the County had not exhausted its $350,000 SIRL, and until it did so there was no coverage. Third, the County did not have a unilateral right to settle the case for the policy limits without Star's consent. Fourth, the County had breached the policy by (a) failing to provide an adequate defense, (b) refusing to cooperate with Star, and (c) agreeing to make payments pursuant to the proposed settlement without Star's consent. Aside from the agenda item, Star did not provide any evidence to support its contentions on the County's alleged breaches.

## E

The district court, after concluding that there was an actual case or controversy, granted in part and denied in part the parties' three summary judgment motions. *See* D.E. 55. In so doing, it made two significant rulings.

First, the district court held that

> a requirement that a legislative claims bill is passed before triggering the coverage provided by Star frustrates the purpose of the [policy] as such a requirement would prohibit the settlement of any tort claims brought against the County where the $200,000 sovereign immunity cap is applicable. As the passage of a claims bill is not within the County's control and remains an uncertainty, the County in this case could never benefit from the coverage provided for in the [p]olicy. By paying $200,000[ ] and agreeing to support a claims bill for $150,000[ ], the County has met the [SIRL] requirements of the Star [p]olicy in this action.

*Id*. at 11.

15

Second, the district court ruled that there was no conflict between the language of § 768.28(5) and provisions in the policy requiring that Star consent in writing "before it is liable under the policy." And it declined to say whether the proposed settlement reached by the County without Star's participation was reasonable or whether any of the parties had breached the terms of the policy. "These issues," explained the court, "involve factual disputes and are not ripe for determination on the present record." *Id.* at 12.

Star moved for reconsideration, arguing in part that the County had breached the terms of the policy by reaching a settlement without its consent. *See* D.E. 58. The district court rejected Star's argument, noting that the County had conditioned the proposed settlement on Star's consent. *See Star Ins.*, 2015 WL 12765535, at *1. Star also claimed that it was entitled to judgment under the Florida Supreme Court's decision in *Plancher v. UCF Athletics Ass'n, Inc.*, 175 So. 3d 724 (Fla. 2015), but the district court found that case distinguishable. *See Star Ins.*, 2015 WL 12765535, at *2.

Mr. Dominguez subsequently moved for entry of judgment. He asserted that the district court's orders had addressed each of the requests for declaratory relief, and noted that Star had not filed any counterclaim or sought any form of affirmative relief. As a result, there was nothing left to adjudicate. *See* D.E. 65. Star opposed this motion, arguing that it had affirmative defenses that needed to be

16

addressed (such as the County's alleged breaches) and that, according to the district court, fact issues remained to be resolved. *See* D.E. 78. Star specifically asked the court for the opportunity to conduct discovery, although it continued to assert that there are "no fact issues and discovery is not necessary." *Id.* at 10.

The district court granted Mr. Dominguez's motion for entry of judgment, ruling that Star's affirmative defenses were not independent causes of action that sought affirmative relief. The court explained that, in concluding that the County could not settle without Star's consent, it necessarily ruled that, should Star consent, the County could satisfy its SIRL without a special claims bill. *See* D.E. 82.

The final judgment declared that the policy's $350,000 SIRL, "which exceeds the County's sovereign immunity cap of $200,000, . . . frustrates the purpose of the County's insurance contract as the County cannot itself pass a legislative claims bill enabling it to satisfy its [SIRL], but [§] 768.28(5) does not provide the County a right to unilaterally settle a claim within the limits of its insurance policy without the agreement of [Star]." D.E. 83.

## II

The district court's summary judgment order is subject to *de novo* review. *See, e.g.*, *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005). The same

17

plenary standard applies to the district court's interpretation of § 768.28(5) and reading of Star's policy under Florida law. *See Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1219 (11th Cir. 2015).

## A

We first address the district court's ruling that the County, by agreeing to pay its sovereign immunity cap of $200,000, plus an additional $150,000, satisfied the policy's $350,000 SIRL (and triggered Star's coverage) without the need for a special claims bill from the Florida Legislature for the $150,000 "gap." The district court relied on the frustration of purpose doctrine, but on this barren record its reliance was misplaced.

## 1

Under Florida law, "'[f]rustration of purpose' refers to that condition surrounding the contracting parties where one of the parties finds that the purpose for which [it] bargained, and which purposes were known to the other party, have been frustrated because of the failure of consideration or impossibility of performance by the other party." *Crown Ice Machine Leasing Co. v. Sam Senter Farms, Inc.*, 174 So. 2d 614, 617 (Fla. 2d DCA 1965). The doctrine, however, has limits. For example, "if knowledge of the facts making performance impossible were available to the promisor, he cannot invoke them as a defense to

18

performance."  *Shore Inv. Co. v. Hotel Trinidad, Inc.*, 29 So. 2d 696, 697 (Fla. 1947).  *See also Ferguson v. Ferguson*, 54 So. 3d 553, 556 (Fla. 3d DCA 2011) ("Because of the central importance placed upon the enforceability of contracts in our culture, the defense of impossibility (and its cousins, impracticability and frustration of purpose) must be therefore applied with great caution if the contingency was foreseeable at the inception of the agreement.");  *1700 Rinehart, LLC v. Advance Am.*, 51 So. 3d 535, 537-38 (Fla. 5th DCA 2010) (explaining that the lack of consideration/frustration of purpose doctrine "has no proper application in a case . . . in which the particular potential obstacle was not only foreseen by the parties, but as to which they specifically bargained"); *Home Design Ctr.—Joint Venture v. Cnty. Appliances of Naples*, 563 So. 2d 767, 769-70 (Fla. 2d DCA 1990) (noting that the "doctrines of impossibility of performance and commercial frustration of purpose . . . should be employed with great caution if the relevant business risk was foreseeable at the inception of the agreement and could have been the subject of an express contractual agreement").

It is true, as the district court observed, that the County cannot itself pass a special claims bill for the "gap" amount of $150,000 which would allow it to satisfy its SIRL and trigger coverage by Star under the excess policy.  But that does not mean that the frustration of purpose doctrine dooms the $350,000 SIRL. Both the County and Star knew (or should have known) that, in 2009 and 2010,

19

§ 768.28(5) established a sovereign immunity cap of $200,000 for municipalities and other government entities. And both the County and Star knew that the $350,000 SIRL exceeded the $200,000 sovereign immunity cap. Because the County purchased excess insurance of $2 million, the parties were aware of (or certainly should have foreseen) a scenario where the County could be liable for an amount over $350,000, in which case the $150,000 "gap" amount would have to be accounted for in some way or another (e.g., through the passage of a special claims bill).

Maybe the County and Star believed (or understood) things differently, but neither party submitted any evidence (aside from the affidavit of Mr. McNabb indicating that the $350,000 SIRL allows the County to receive a reduced premium) concerning their negotiations, their agreement to fix the SIRL at $350,000 as opposed to some other figure, or their understanding of how the policy provisions would operate given § 768.28(5) in a case like this one. Without such evidence, the district court should not have applied the frustration of purpose doctrine.[2]

---

[2] Given our ruling, we need not consider the other arguments advanced by Star in opposition to the district court's use of the frustration of purpose doctrine.

**2**

It is nevertheless possible that, despite the $350,000 SIRL, a special claims bill may not be required to trigger Star's coverage under the excess policy. The last sentence of the February 2010 version of § 768.28(5)—the sentence italicized in our earlier block quote—reads as follows: "Notwithstanding the limited waiver of sovereign immunity provided herein, the state or an agency or subdivision thereof may agree, within the limits of insurance coverage provided, to settle a claim made or a judgment rendered against it without further action by the Legislature, but the state or agency or subdivision thereof shall not be deemed to have waived any defense of sovereign immunity or to have increased the limits of its liability as a result of obtaining insurance coverage for tortious acts in excess of the $100,000 or $200,000 waiver provided above[.]"

Maybe this sentence means that, when a government entity which has sovereign immunity purchases insurance, it can settle a claim within the limits of its insurance coverage without a special claims bill by the Legislature (i.e., "without further action by the Legislature"). In the words of the Fourth District, "the claims bill procedure was intended only as a means of securing additional recovery *directly* against the government, rather than a third-party, such as a liability insurer or insurance agent. Indeed, no claims bill [is] necessary if excess insurance [is] purchased and the [plaintiffs] f[i]nd it necessary to proceed directly

21

against the excess carrier." *Martin v. Nat'l Union Fire Ins. Co.*, 616 So. 2d 1143, 1145 (Fla. 4th DCA 1993) (involving the 1985 version of § 768.28 and addressing claim against insurance agents for failure to procure excess insurance for a government entity after trial resulted in judgment against entity exceeding the sovereign immunity caps).

As the Florida Supreme Court has put it, the "within the limits of insurance coverage provided" language in § 768.28(5) "reflects that the [L]egislature specifically recognized that the [sovereign immunity] limits under the statute were discretionary and could be increased if insurance coverage was provided. . . . [T]he [L]egislature has determined that, in addition to allowing discretionary recovery through a legislative claims bill, the limits of the sovereign immunity statute may be exceeded when insurance coverage is available." *Mich. Millers*, 607 So. 2d at 422 (involving a settlement amount over the sovereign immunity cap). As a result, in at least some scenarios, a municipality's excess insurer is not able to rely on the sovereign immunity of the municipality to avoid coverage. *See id.* ("We find that the immunity defense available under [§] 768.28 is not absolute within the meaning of the term 'legally entitled to recover' [in the uninsured motorist statute] so as to allow such a defense to be raised substantively by an insurance carrier."). *See also Tramel*, 707 So. 2d at 848 (explaining that § 768.28(5) "expressly permits

22

governmental entities to settle claims up to the limit of liability insurance they may carry").[3]

On the other hand, maybe a special claims bill is needed for the $150,000 "gap" amount that must be satisfied as part of the County's SIRL. Star cites to a footnote in *Plancher*, a case which involved the death of a college football player at a Florida university, to support this argument. In *Plancher*, the Florida Supreme Court held that the UCF Athletics Association was entitled to limited sovereign immunity under § 768.28(5). *See Plancher*, 175 So. 3d at 727-29. In a footnote, the Florida Supreme Court rejected, as "without any merit," the argument of the plaintiffs—who had obtained a judgment of $10 million against the UCF Athletics Association—that the Association's liability insurer was "still responsible for the entire judgment amount." *See id.* at 728 n.4. The Florida Supreme Court cited to *Stuyvesant Ins. Co. v. Bournazian*, 342 So. 2d 471, 472 n.3 (Fla. 1976), and § 768.28(5) in the footnote, but did not mention, much less discuss, its prior decision in *Michigan Millers*. So it is unclear what effect, if any, *Plancher* has on *Michigan Millers,* particularly on the record we have here.

---

[3] One Florida intermediate appellate court has suggested that under the post-1987 version of § 768.28(5), the liability of a government entity is limited to the sovereign immunity caps "regardless of whether [the entity] carried liability insurance in excess of those amounts." *City of Winter Haven v. Allen*, 541 So. 2d 128, 131 (Fla. 2d DCA 1989) (holding that 1987 version of § 768.28 could not be applied retroactively). But *Allen* was issued before Florida Supreme Court's decision in *Michigan Millers*, so it is unclear what resonance this language still has.

23

The uncertainty is all the greater because neither *Michigan Millers* nor *Plancher* appeared to involve an SIRL, like the one here, which exceeds the sovereign immunity cap.  Moreover, § 768.28(5) says that by obtaining insurance a government entity does not waive the defense of sovereign immunity and does not increase the limits of liability.  It is not at all clear what this language means in a case like this one.

Given the way this case was litigated and presented to the district court on summary judgment, we need not resolve this difficult issue.  The settlement proposal approved by the Board of Commissioners states that it is subject to Star's consent, and also provides that the $150,000 "gap" amount will be "paid by the County, if approved by the Legislature in a claims bill."  So, whether a special claims bill is or is not statutorily required before the County can pay the "gap" amount to satisfy its SIRL of $350,000, the proposed settlement between the County and Mr. Hernandez anticipates the need for, and passage of, such a bill by the Legislature.  It is not our place to rewrite the terms of the proposed settlement so that we can address whether, under a certain set of facts, the County can pay the $150,000 "gap" amount (and trigger Star's excess coverage) without a special claims bill.  And we would be providing an impermissible advisory opinion if we addressed the interplay of § 768.28(5) and the SIRL on facts not before us.

24

**B**

The County argues that it does not need Star to agree to the proposed settlement, and asserts that it can settle with Mr. Dominguez for an amount within the policy limits without Star's approval, because § 786.28(5) supersedes the consent requirement set forth in the policy. *See* Br. for Hillsborough County at 10-12. Like the district court, we reject this argument.

In relevant part, § 768.28(5) states that a government entity "may agree, within the limits of insurance coverage provided, to settle a claim in certain circumstances where there is insurance coverage, a government entity can settle a claim . . . against it without further act of the [L]egislature." We recognize that, under Florida law, a contractual provision that is contrary to a statute may be invalid, *see Freeman v. Am. Integrity Ins. Co. of Fla.*, 180 So. 3d 1203, 1208 (Fla. 1st DCA 2015) (citing cases), but here there is no clash between § 768.28(5) and the policy's consent requirement. Putting aside the issue of the need (or lack thereof) for a special claims bill, the statutory text quoted above does not conflict with (and therefore does not abrogate) a policy provision which requires that the insurer consent to any settlement within policy limits. First, the words "insurance coverage" in § 768.28(5) indicate that one must look to the terms of the policy to determine what is covered, and here the policy clearly requires that Star consent to any settlement that would trigger coverage. *See* Excess Liability Policy, D.E. 18-1,

25

at § IV.A.2.b(1) & (3).    Second, if the County's position were correct, a government entity could, notwithstanding policy language requiring the insurer's consent, unilaterally agree to settle a claim on terms that are unjustified or unreasonable, and thereby put the insurer—which has lost any say on the matter—on the hook.

This does not mean, however, that an insurer like Star can arbitrarily veto (or withhold its consent from) any settlement within policy limits so that it will not have to pay anything.  Under Florida law, Star, as an excess insurer, has a duty of good faith to evaluate settlement proposals, and it cannot "arbitrarily reject a reasonable settlement offer." *N. Am. Van Lines, Inc. v. Lexington Ins. Co.*, 678 So. 2d 1325, 1332 (Fla. 4th DCA 1996) (addressing the duties of primary and excess insurers with respect to settlement proposals).

Unfortunately, we cannot apply this good faith duty here, as we agree with the district court that a number of material factual issues are not ripe for resolution. The parties, for reasons known only to them, chose not to conduct discovery.  As a result, they failed to present critical evidence to the district court with respect to the accident and the proposed settlement.  No one knows who (if anyone) was at fault in the accident that resulted in Ms. Dominguez's death; or what reasonable inferences might be drawn on the issue of fault; or the age or earning capacity of Ms. Dominguez; or the way that likely damages under Florida wrongful death law

26

were calculated by the County and Mr. Dominguez in arriving at their proposed settlement; or the reason the County feared (or expected) a judgment in excess of the $350,000 SIRL if the case were to go to trial. We could go on, but these examples are sufficient to make the point.[4]

## C

Possibly appreciating its predicament, Star says that the district court should have granted its belated motion for discovery. Reviewing for abuse of discretion, *see Benson v. Tocco, Inc.*, 113 F.3d 1203, 1208 (11th Cir. 1997), we are not persuaded. The parties told the district court that they did not need discovery, and the court was entitled to rely on that representation. In addition, Star waited until the district court had denied its motion for reconsideration to request discovery. Finally, even when it requested discovery, Star told the district court that it still believed that discovery was not necessary.

---

[4] For the same reason, Star cannot prevail on its contention that the district court erred by not reaching its arguments that the County breached the terms of the policy by failing to provide an adequate defense, refusing to cooperate, and agreeing to a settlement (a voluntary payment) without its consent. *See* Br. for Star Insurance at 34-40. Star did not present any evidence to the district court with respect to what the County did (or did not do) in investigating or litigating the deadly accident in the underlying state-court wrongful death suit. Nor did it present any evidence as to what cooperation or information the County failed to render or provide. With respect to Star's contention that the proposed settlement violated the voluntary payments provision of the policy, the agenda item that Star presented to the district court stated that the proposal was subject to Star's consent. If the proposal was ultimately subject to Star's consent—a consent which has not been given—then there was no unilateral settlement that breached the policy. Star essentially admits as much in its brief. *See* Br. for Star Insurance at 28-34.

## III

The district court's final judgment, and the summary judgment order on which it was based, are affirmed in part and vacated in part as follows: (1) We affirm the portions of the summary judgment order and final judgment which (a) declare that the County cannot unilaterally settle Mr. Dominguez's claim within policy limits without Star's consent, and (b) explain that other issues related to the proposed settlement are unripe for resolution on the current record; (2) We vacate the portion of the summary judgment order and the final judgment which declares that the $350,000 SIRL can be satisfied without the passage of a special claims bill.  On this record, the district court's reliance on the frustration of purpose doctrine was misplaced, and we have no basis to address the interplay between § 768.28(5) and the policy's SIRL because the proposed settlement between the County and Mr. Dominguez anticipates the need for, and passage of, a special claims bill; and (3) We affirm the district court's denial of Star's belated motion for discovery.

The case is remanded to the district court with instructions to amend the final judgment in accordance with this opinion.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.[5]**

---

[5] As to all other issues raised, we affirm without discussion.

28