[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13153

_____

ACTION NISSAN, INC.,
d.b.a. Universal Hyundai,
WILLIAM NERO,

Plaintiffs-Appellees,

*versus*

HYUNDAI MOTOR AMERICA,

Defendant-Appellant,

GENESIS MOTOR AMERICA,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:18-cv-00380-WWB-EJK

_____

Before WILLIAM PRYOR, Chief Judge, ROSENBAUM and ABUDU, Circuit Judges.

PER CURIAM:

This appeal involves a contract dispute between a national automobile distributor, Hyundai Motor America, ("HMA"), and a car dealership, Action Nissan, Inc., and its owner, William Nero (collectively, "Action Nissan"). The case proceeded to trial, and the jury returned a verdict in Action Nissan's favor on its breach-of-contract and breach-of-the-implied-covenant-of-good-faith-and-fair-dealing claims and awarded the business $16 million in damages. After trial, HMA moved for judgment as a matter of law and for a new trial. The district court denied both motions.

On appeal, HMA argues that it is entitled to judgment as a matter of law or a new trial because: (1) the district court's jury instruction regarding HMA's obligation under the parties' agreement included a legally flawed interpretation of a key provision in the contract; and (2) the court's curative instruction regarding HMA's assertion of an impossibility defense was misleading, prejudicial, and harmful because it deprived HMA of a central and critical theory of defense. After a thorough review of the record, and

with the benefit of oral argument, we affirm the district court's judgment.

## I.    FACTUAL & PROCEDURAL BACKGROUND

Since 1998, Action Nissan, a registered and Florida-based motor vehicle dealer d/b/a Universal Hyundai, has specialized in the sale and service of Hyundai-branded vehicles it obtains from its national distributor, HMA.

In 2006, Action Nissan sued HMA in a separate and unrelated dispute. In August 2009, as a resolution to that lawsuit, HMA and Action Nissan entered into a confidential settlement agreement (the "2009 Agreement"). The instant case revolves around the interpretation of Section 10 of that Agreement which reads, in part:

> **10. New Luxury Line-make Established by HMA** - For a period of ten (10) years after the Effective Date of this Agreement ("the Luxury ROF Period"), *HMA agrees that Nero shall have a right of first refusal to be appointed as a dealer for two (2)* **open points** *for any* **new luxury motor vehicle line-make**, *if any, established by Hyundai Motor Corporation ("HMC")* or any entity in which HMC is the majority owner or has a controlling interest (all herein referred to as "HMC") *and for which HMA or a subsidiary or division of HMA or any entity controlled by HMA (all herein referred to as "HMA") is granted the* **rights of distribution** *in the United States.* Nero's rights of first refusal to be appointed a dealer for such new luxury line-make shall be in a county of his choosing as among the following counties in

> Florida: Broward, Palm Beach, Orange, Osceola, Seminole, Hillsborough, Pasco and Pinellas ("the Eight-County Area").

(emphasis added).

Florida law governs the interpretation of the 2009 Agreement.

In 2008, HMA introduced the Genesis model, a luxury vehicle, as part of its existing Hyundai brand. HMA distributed the Genesis vehicles in the United States through its existing Hyundai dealer network. In 2016, HMA added two new vehicles to the Genesis model. Also in 2016, HMA created a subsidiary company, Genesis Motor America ("GMA"), to oversee the development and distribution of the Genesis vehicles.

In December 2017, GMA applied to the Florida Department of Highway Safety and Motor Vehicles ("DHSMV") for a distribution rights license for the Genesis models. The DHSMV denied GMA's application in July 2018 on the ground that a distribution system for Genesis vehicles already existed through current Hyundai dealers.

During the DHSMV application process, on January 26, 2018, HMA and GMA issued a press release, announcing their decision to create a "distinct and properly-sized Genesis retail network." In the press release, HMA and GMA announced that they would select dealers in the Hyundai dealer network with a Genesis Participation Agreement and offer them the "first opportunity to apply for the Genesis franchise." In response to HMA and GMA's announcement, Action Nissan sent letters to HMA on January 29,

2018, February 14, 2018, and February 28, 2018, attempting to exercise its right of first refusal pursuant to the 2009 Agreement. HMA never responded to any of Action Nissan's letters. It did, however, send a letter dated March 2, 2018, to all existing Florida Hyundai dealers, including Action Nissan, offering them an opportunity to apply to become an authorized Genesis dealer. Along with the March 2, 2018, letter, HMA and GMA provided a list of "Initial Markets" that dealers could express interest in occupying, which included several geographic regions in Florida and the Eight-County Area mentioned in the parties' 2009 Agreement.

States then began denying GMA's applications for Genesis distribution rights on the same grounds that Florida's DHSMV would; namely, that existing Hyundai dealerships already had the rights to distribute certain Genesis vehicles, so they cannot lose those rights to a new network of Genesis-specific dealerships. In May 2018, HMA and GMA sent a letter to Florida Hyundai dealers explaining that all existing Hyundai dealers would have the opportunity to enter an agreement to sell vehicles from the new Genesis line-make. By December 2018, almost all or all the existing Florida Hyundai dealers entered into agreements to sell the vehicles.

During HMA and GMA's outreach to dealers, GMA applied again to the Florida DHSMV for a distributor license. On October 30, 2018, the DHSMV issued GMA a distributor license for the new Genesis line-make. By January 2019, the Florida DHSMV had licensed Hyundai dealers to sell vehicles from the new Genesis line-make in Florida.

On March 12, 2018, Action Nissan sued HMA for breach of contract and breach of the implied covenant of good faith and fair dealing, arguing that HMA violated Action Nissan's right of first refusal under the 2009 Agreement. In the alternative, Action Nissan brought a claim for anticipatory breach based on HMA's failure to provide assurance that it would honor Action Nissan's right of first refusal, or to otherwise respond to the three letters it sent HMA when it attempted to exercise its right of first refusal in early 2018.

Following discovery, the parties cross-moved for summary judgment. The district court found that there were genuine issues of material fact regarding the meaning of "line-make," "rights of distribution," and "open point" in the 2009 Agreement that a jury should resolve. However, the district court precluded HMA from presenting a legal impossibility defense based on the DHSMV's denial of GMA's December 2017 application because the relevant Florida licensing laws and regulations did not change between the time the parties executed the 2009 Agreement and the time that performance under the Agreement became ripe, thus making the DHSMV's adverse July decision foreseeable.

During the week-long trial, each party presented voluminous evidence regarding their respective interpretations of the terms "line-make," "rights of distribution," and "open point" within the terms of the 2009 Agreement. Action Nissan introduced evidence that the Initial Markets included in the March 2018 letter were open points. It also introduced evidence that two Genesis-

branded vehicles were launched in 2016 as the first attempts to establish a Genesis brand distinct from the Hyundai line-make. GMA was also established in 2016 to oversee the Genesis brand and, by 2018, GMA publicly referred to Genesis as a "global luxury automotive brand." The former lead of the Genesis brand confirmed that by "early 2018, we believed that the Genesis brand was a different brand than the Hyundai brand." All this evidence supported Action Nissan's position that a Genesis line-make existed by March 2018, using Action Nissan's definition of the term.

There also was evidence that, although the DHSMV authorized GMA to distribute the new Genesis line-make in October 2018, HMA granted GMA rights of distribution well before October 2018, and several states—at least nineteen—did not require the sort of distributor's licensure that the DHSMV required. In addition, HMA and GMA's January 2018 press release stated that GMA "distributes, markets and services Genesis vehicles in the United States." Moreover, in HMA and GMA's March 2018 letter sent to Hyundai dealers inviting them to apply for a Genesis dealership, they identified themselves as "Distributor Parties." Thus, the DHSMV's adverse July decision did not affect GMA's distribution rights in the United States more broadly as it was distributing Genesis vehicles from the new line-make in nineteen states well before October 2018.

HMA, on the other hand, argued that it had not violated Action Nissan's rights under the 2009 Agreement because the three necessary conditions for purposes of Action Nissan exercising a

right of first refusal had not occurred—specifically, that no "open points" existed in the Eight-County Area for Action Nissan to occupy and distribute Genesis vehicles from the new line-make. HMA presented evidence on the DHSMV's technical advisories, its distributor and dealer licensure process, Florida statutes, and legislative changes and explained how that impacted the new "line-make" and any "open points." HMA argued that, prior to the DHSMV's October decision, Genesis vehicles were part of the existing Hyundai line-make. To create a separate Genesis line-make, GMA needed authorization from the DHSMV, which was part of the same process as applying for a distributor license. David Zuchowski, who approved the 2009 Agreement on behalf of HMA, testified that in reviewing the 2009 Agreement he "thought [HMA] would have a legal battle getting approval for the Genesis name because it was already out in the market," and "it's very difficult to take something away from dealers once they have it already." It also presented evidence that the DHSMV's initial denial of GMA's application prevented the existence of "open points" because the DHSMV's adverse July decision transformed the existing Hyundai dealer network into the Genesis dealer network, eliminating GMA's need for additional Genesis dealerships. Thus, HMA argued, the DHSMV's decision demonstrated that GMA had sufficient representation throughout Florida, including the Eight-County Area.

Although the district court excluded HMA from asserting legal impossibility as a defense, at a pretrial conference, it noted that HMA could introduce the DHSMV's adverse July ruling as evidence to show the impact its decision had on the existence of

"open points" and a new "line-make." While HMA elicited testimony from its western region director, Erwin Raphael, he stated that HMA "had objections from . . . dealers across the country, dealer associations, and even DMVs. And it made [performance] almost impossible." The court struck the testimony that performance was "almost impossible" and granted Action Nissan's request for a jury instruction that the impossibility defense is not available in this case.

At the close of Action Nissan's case in chief, HMA moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a), arguing that it was entitled to a directed verdict on the anticipatory-breach claim because the doctrine of anticipatory breach did not apply where HMA did not have an obligation to perform under the 2009 Agreement. Further, HMA argued that the evidence was insufficient to show that HMA breached the 2009 Agreement or the implied covenant of good faith and fair dealing because the three conditions precedent required for HMA's performance did not occur as no open points ever existed during the Agreement's ten-year period. HMA did not argue that the three conditions precedent had to occur simultaneously.

However, at the charge conference, HMA requested that the district court instruct the jury that the three conditions precedent—a new line-make, open points, and distribution rights—had to exist "at the same time" to trigger HMA's duty of performance. HMA argued that the plain language of the 2009 Agreement mandated that the three conditions precedent "come into existence at

some point in time," during the ten-year period "for there to be a right of first refusal." The district court refused to provide the proposed instruction, finding that the language of the 2009 Agreement did not require that the three conditions precedent "occur at the exact same time."

Instead, the court instructed the jury that Action Nissan's right of first refusal under the 2009 Agreement was triggered if the three conditions precedent "existed on or before August 10, 2019." The district court charged the jury to "consider the plain and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract" to ascertain what the parties agreed to and "[i]n deciding what the disputed terms of the contract mean, [they] should consider the whole contract, not just isolated parts" to ensure that "all the parts make sense when taken together." To cure HMA's introduction of evidence implying impossibility, the district court instructed the jury to disregard evidence that the DHSMV's unfavorable July decision made it legally impossible for HMA to perform its duty under the 2009 Agreement.

Following deliberations, the jury returned a verdict in favor of Action Nissan on the breach-of-contract and breach-of-the-implied-covenant-of-good-faith-and-fair-dealing claims and awarded $16 million in damages. Because the jury found that HMA actually breached the 2009 Agreement, the jury did not return a verdict on the anticipatory-breach claim. Accordingly, the district court entered judgment in favor of Action Nissan.

Following the entry of judgment, HMA renewed its motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), arguing that the 2009 Agreement required all three conditions precedent to exist at the same point in time to trigger Action Nissan's right of first refusal. In the alternative, HMA moved for a new trial pursuant to Rule 59(a) on the basis that the court's jury instructions to disregard the DHSMV evidence as it related to an impossibility defense and evidentiary rulings prejudicially harmed its defense.

The district court denied the Rule 50(b) motion, finding that it was untimely with respect to the anticipatory-breach claim and that HMA had waived its arguments as to the breach-of-contract and the breach-of-the-implied-covenant-of-good-faith-and-fair-dealing claims because it failed to raise them in its Rule 50(a) motion during trial. The court also denied the motion on the merits. The court denied the alternative motion for a new trial, as well. HMA timely appealed.

## II.    STANDARDS OF REVIEW

We review the accuracy of jury instructions *de novo*, but "[w]e review a district court's refusal to give a requested jury instruction" for an abuse of discretion. *Brink v. Direct Gen. Ins. Co.*, 38 F.4th 917, 922 (11th Cir. 2022) (citation omitted); *see Conroy v. Abraham Chevrolet-Tampa, Inc.*, 375 F.3d 1228, 1233 (11th Cir. 2004). If the instructions accurately reflect the law, the trial judge has "wide discretion as to the style and wording employed in the instruction." *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1115 (11th

Cir. 2006). We will reverse and order a new trial only when we are "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Broaddus v. Fla. Power Corp.*, 145 F.3d 1283, 1288 (11th Cir. 1998) (internal quotation marks and citation omitted).

We review the denial of a motion for a new trial for an abuse of discretion. *Kerrivan v. R.J. Reynolds Tobacco Co.*, 953 F.3d 1196, 1204 (11th Cir. 2020). The deferential abuse-of-discretion standard "is particularly appropriate where a new trial is denied and the jury's verdict is left undisturbed." *Rosenfield v. Wellington Leisure Prods., Inc.*, 827 F.2d 1493, 1498 (11th Cir. 1987). Therefore, we do not grant new trials "on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Ins. Co. of N. Am. v. Valente*, 933 F.2d 921, 923 (11th Cir. 1991) (internal quotation marks and citation omitted).

We review a Rule 50(b) renewed motion for judgment as a matter of law *de novo*, applying the same standards as the district court. *Abel v. Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000). We "view[] the evidence in the light most favorable to the non-moving party." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1242 (11th Cir. 2010) (citation omitted).

Judgment as a matter of law is appropriate only if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the" non-moving party. Fed. R. Civ. P. 50(a). "Only the sufficiency of the evidence matters; what the jury actually found is irrelevant." *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 724

(11th Cir. 2012). Thus, we will not disturb a jury's verdict unless "there is no legally sufficient evidentiary basis for a reasonable jury to find" for the party on that issue. *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (internal quotation marks and citation omitted).

## III. DISCUSSION

HMA raises four issues on appeal: (1) whether the district court erred in failing to adopt its proposed instruction that the 2009 Agreement's three conditions precedent—a new line-make, open points, and rights of distribution—had to exist at the same point in time to trigger Action Nissan's right of first refusal[1]; (2) whether the district court erred in denying HMA's motion for judgment as a matter of law if indeed all three conditions precedent had to exist at the same time; (3) whether the district court's curative instruction about legal impossibility misled the jury to disregard all evidence about the DHSMV, which was erroneous and prejudicial to HMA's defense; and (4) whether the district court erred by failing to grant HMA judgment as a matter of law on Action Nissan's

---

[1] As previously mentioned, HMA asked the district court to give an instruction stating that the three conditions precedent "were all in existence at the same time." HMA explained that the instruction was necessary because "[a]ll three [conditions] have to have come into existence at some point in time for there to be a right of first refusal." The district court understood HMA's proposed instruction to mean that the three conditions precedent had "to occur at the exact same time." At oral argument, HMA clarified that its request was that the district court instruct the jury that the three conditions precedent had to exist at the same point in time, not that they had to arise simultaneously.

anticipatory-breach claim because HMA never had an obligation to perform under the 2009 Agreement.

### A.    HMA's Motion for Judgment as a Matter of Law or a New Trial

On appeal, HMA argues that the district court erred by failing to adopt HMA's proposed jury instruction that all three conditions precedent had to exist simultaneously to trigger Action Nissan's right of first refusal. In response, Action Nissan argues that HMA has waived this argument because it failed to raise it in its initial Rule 50(a) motion.

A Rule 50(b) motion is merely a renewal of a previously asserted motion brought under Rule 50(a), and "thus a district court can grant a Rule 50(b) motion 'only on grounds advanced in the preverdict Rule 50(a) motion.'" *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1260 (11th Cir. 2016) (alterations adopted) (quoting Fed. R. Civ. P. 50 advisory committee's note to 2006 amendment). Therefore, a party waives any claims not asserted in a Rule 50(a) motion. *See Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1245 (11th Cir. 2001). This rule exists to prevent a moving party from ambushing "the court and opposing [party] after the verdict when the only remedy is a completely new trial." *Id.* (citation omitted). Nevertheless, because this rule is a harsh one, we recognize "an exception to that rule when confronting grounds that are closely related to those raised in an initial" Rule 50(a) motion. *McGinnis*, 817 F.3d at 1261 (internal quotation marks omitted). We also recognize that in certain instances, a party

properly preserves a Rule 50(b) argument when it clearly and un-ambiguously raises it during a charge conference. *See id.* at 1263.

HMA did not waive its argument that the three conditions precedent needed to exist simultaneously. It is true that HMA did not assert or even discuss the issue of the coexistence of the three conditions precedent in its Rule 50(a) motion. HMA instead argued that one of the conditions precedent—that open points exist in the Eight-County Area—did not occur at all. Still, we conclude that HMA preserved that argument when it raised it unequivocally during the charge conference.

HMA requested that the district court instruct the jury that the three conditions precedent—a new line-make, open points, and distribution rights—had to exist "at the same time" to trigger HMA's duty of performance. HMA argued that the plain language of the 2009 Agreement mandated that the three conditions precedent "come into existence at some point in time," during the ten-year period "for there to be a right of first refusal." The district court refused to provide the proposed instruction.

A district court's refusal to give a requested jury instruction constitutes an abuse of discretion if "(1) the requested instruction correctly stated the law, (2) the instruction dealt with an issue properly before the jury, and (3) the failure to give the instruction resulted in prejudicial harm to the requesting party." *Brink*, 38 F.4th at 923 (internal quotation marks and citation omitted). Therefore, we will reverse the jury's verdict where a party shows that the instructions were erroneous *and* prejudicial. *See Mosher v.*

*Speedstar Div. of AMCA Intern, Inc.*, 979 F.2d 823, 824 (11th Cir. 1992).

Under Florida law, the parties' intention governs the interpretation of a contract, and the best evidence of the parties' intent is the plain language of the contract. *Whitley v. Royal Trails Prop. Owners' Ass'n, Inc.*, 910 So. 2d 381, 383 (Fla. Dist. Ct. App. 2005). Absent any ambiguity, courts should ascertain the parties' intent from the words used in the contract. *Parrish v. State Farm Fla. Ins. Co.*, 356 So. 3d 771, 774 (Fla. 2023).

A contract is ambiguous if it is susceptible to different, reasonable interpretations. *Nationstar Mortg. Co. v. Levine*, 216 So. 3d 711, 715 (Fla. Dist. Ct. App. 2017). A latent ambiguity in a contract arises "where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings." *Mac-Gray Servs., Inc. v. Savannah Assocs. of Sarasota, LLC*, 915 So. 2d 657, 659 (Fla. Dist. Ct. App. 2005) (internal quotation marks and citation omitted). In cases where the contract contains a latent ambiguity, parties may present extrinsic evidence to resolve that ambiguity. *Nationstar*, 216 So. 3d at 715.

Nevertheless, where one interpretation of the contract would lead to an absurd result and another interpretation would be consistent with reason and probability, courts should adopt the rational interpretation. *Quinerly v. Dundee Corp.*, 31 So. 2d 533, 534–35 (Fla. 1947). Thus, Florida law instructs courts to "reach a

contract interpretation consistent with reason, probability, and the practical aspect of the transaction between the parties." *Whitley*, 910 So. 2d at 383 (citation omitted).

The district court did not err in rejecting HMA's proposed jury instruction on the timing of the three conditions precedent necessary to trigger Action Nissan's right of first refusal. The parties' competing interpretations of the terms "open points," "rights of distribution," and "line-make," and when each of those conditions came into existence, raised issues of fact as to the parties' intent when entering the 2009 Agreement. The parties each submitted substantial evidence to support their respective interpretations of those terms. The dispute is itself evidence of latent ambiguity. *See Dear v. Q Club Hotel, LLC*, 933 F.3d 1286, 1298 (11th Cir. 2019) ("If . . . the contract is reasonably susceptible to more than one interpretation, it is ambiguous and its meaning is a question for the jury." (internal quotation marks and citation omitted)). Thus, the district court correctly provided an instruction that set forth the parties' various contentions about the meaning of "open points," "rights of distribution," and "line-make." It was then the jury's role to decide, on the basis of the evidence presented, which interpretation matched the parties' intent under the 2009 Agreement. *See id.*

We disagree with HMA's contention that the sole reasonable interpretation of the 2009 Agreement is that the three conditions precedent had to exist simultaneously to trigger Action Nissan's right of first refusal. The language of Section 10 of the 2009 Agreement provides that for a period of ten years beginning on the

date of the Agreement, Action Nissan "shall have a right of first refusal to be appointed as a dealer for two (2) open points" of its choosing in the Eight-County Area "for any new luxury motor vehicle line-make . . . and for which HMA or a subsidiary or division of HMA or any entity controlled by HMA . . . is granted the rights of distribution in the United States."  The verb stem of that sentence ("shall have") is phrased in the future conditional tense, *not* the present tense.  Nothing about the provision's syntax explicitly requires Hyundai to "actively possess" Florida licensing rights before "open points" could come into existence under the terms of the contract.  Because HMA's interpretation was not unambiguously required, the district court did not abuse its discretion when it refused to give HMA's proposed instruction to the jury and left the interpretative task to the factfinder.

Even if HMA's interpretation is correct, and the language of the 2009 Agreement required the three conditions precedent to exist at the same time, sufficient evidence shows that the three conditions precedent existed at the same time in or around March 2018.  In January 2018, HMA announced its decision to establish its Genesis model as a new line-make.  During the same time, HMA authorized GMA to distribute Genesis vehicles from the new line-make, and there were at least nineteen states that did not require a distributor license.  Thus, HMA had distribution rights for the new Genesis line-make in the United States in early 2018.  In March 2018, HMA and GMA sent a letter to several Hyundai dealers offering them the chance to apply for open points—termed Initial Markets—including in the Eight-County Area to build exclusive

Genesis dealerships.  Therefore, there was sufficient evidence for the jury to also find that all three conditions precedent existed in or around March 2018.

HMA maintains that it did not obtain distribution rights until it obtained licensure from the DHSMV in October 2018, and by that time, any open points ceased to exist.  However, nothing in the language of the 2009 Agreement suggests that HMA had to obtain distribution rights in Florida to satisfy that condition.  Pursuant to Section 10 of the 2009 Agreement, HMA had to possess distribution rights in the United States, but not specifically in Florida.  Trial evidence established that HMA had such distribution rights in early 2018 because it authorized GMA to distribute Genesis vehicles from the new line-make and at least nineteen states did not require a state agency to issue a distributor license.

In sum, sufficient evidence supports the jury's verdict that HMA breached the 2009 Agreement because the three conditions precedent all existed during the relevant ten-year period.  Therefore, HMA has failed to show that it is entitled to judgment as a matter of law on the breach-of-contract claim.  *See McGinnis*, 817 F.3d at 1254.

HMA also has failed to establish that it suffered prejudicial harm because of the district court's decision not to give its proposed jury instruction.  *See Brink*, 38 F.4th at 923.  As noted, whether a new "line-make," "open points," and "rights of distribution" existed during the ten-year period, and whether they all needed to exist at the same time, raised issues of fact for the jury's

resolution. The district court instructed the jury on the parties' respective definitions of "line-make," "rights of distribution," and "open points." The parties presented to the jury their interpretations of whether the conditions all had to coexist during closing arguments. Most pertinent, the district court instructed the jury that "[i]n deciding what the disputed terms of the contract mean, [they] should consider the whole contract, not just isolated parts" to ensure that "all the parts make sense when taken together." *See Super Cars of Mia., LLC v. Webster*, 300 So. 3d 752, 755 (Fla. Dist. Ct. App. 2020) (explaining that "a cardinal principle of contract interpretation is that the contract must be interpreted in a manner that does not render any provision of the contract meaningless" (internal quotation marks and citation omitted)). Because the court's instructions comport with Florida law, and we agree with the district court that the contract was ambiguous as to whether the conditions precedent had to exist at the same time, the district court did not abuse its discretion in refusing to adopt HMA's proposed instruction.

Because sufficient evidence supports the jury's verdict that HMA did actually breach the 2009 Agreement by failing to offer Action Nissan a right of first refusal, we need not reach Action Nissan's alternative claim for anticipatory breach. *See Hosp. Mortg. Grp. v. First Prudential Dev. Corp.*, 411 So. 2d 181, 182 (Fla. 1982) (explaining distinction between a breach of contract claim and an anticipatory breach claim).

### B.     Impossibility Instruction

Under Florida law, the doctrine of legal impossibility is available where the purposes for which contracting parties entered into an agreement have, on one side, become impossible to perform. *Hillsborough County v. Star Ins. Co.*, 847 F.3d 1296, 1305 (11th Cir. 2017) (quoting *Crown Ice Mach. Leasing Co. v. Sam Senter Farms, Inc.*, 174 So. 2d 614, 617 (Fla. Dist. Ct. App. 1965)).  However, a party may not assert legal impossibility as a defense "if knowledge of the facts making performance impossible were available to the promisor."  *Id.* (quoting *Shore Inv. Co. v. Hotel Trinidad, Inc.*, 29 So. 2d 696, 697 (Fla. 1947)).

HMA argues that the district court's curative instruction on its legal impossibility defense warrants a new trial.  It contends that the district court's curative instruction caused it prejudicial harm by misleading the jury to disregard its central defense that one of the conditions precedent—open points—never existed because of the DHSMV's initial denial of its application for a distributor license.

As the district court found, the DHSMV's adverse ruling was reasonably foreseeable at the time that the parties executed the 2009 Agreement.  The relevant Florida licensing laws and regulations remained the same when the parties entered into the 2009 Agreement and when the three conditions precedent came into existence, triggering HMA's performance.  In fact, HMA's witness, Zuchowski, testified that when he executed the 2009 Agreement on HMA's behalf, he "thought [HMA] would have a legal battle

getting approval for the Genesis name because it was already out in the market." Therefore, when HMA agreed to offer Action Nissan a right of first refusal, HMA already was aware that the DHSMV might not grant it a distributor license. *See Hillsborough*, 847 F.3d at 1305.

Moreover, HMA has not shown that the curative instruction, taken as a whole, was erroneous and prejudicial. *See Mosher*, 979 F.2d at 824. Even though HMA could not use evidence related to the DHSMV to support an impossibility defense, the district court did allow HMA to rely on the DHSMV evidence for purposes of supporting its other defenses. Specifically, HMA introduced evidence on the DHSMV's actions as it related to the creation of a new line-make, open points, and its distributor and dealer licensure process. The district court never limited HMA's reliance on such evidence for purposes of advancing its other defenses.

HMA argues the jury instruction on impossibility necessarily prevented the jury from considering evidence relevant to whether open points existed solely because it may have also implied legal impossibility. We disagree. The instruction makes clear that the limitation relates to only the barred impossibility defense. Indeed, its use of the modifying phrase, "that argues or implies that it was legally impossible," limits the universe of evidence captured by the instruction. It does not mean that all evidence *arguably relevant* to a legal impossibility defense is barred from consideration.

Additionally, HMA points to no specific evidence that it believes the jury could not consider and that caused prejudice.

Rather, it appears the May 2018 communication that *all* existing Hyundai dealers would be offered a Genesis dealer agreement, instead of the small number of dealerships that HMA and GMA had originally planned on, would have fallen outside of the impossibility instruction's reach even under HMA's broad interpretation because it had nothing to do with the Florida DHSMV—in fact, it predated the July 2018 denial.  This means the jury could still consider HMA's arguments that open points ceased to exist before the DHSMV granted GMA its license, even under HMA's broad interpretation of the instruction.  In any event, even if the jury could not consider evidence related to the July 2018 denial, there was sufficient evidence showing that all three conditions were met in March 2018, as explained above.

Accordingly, we conclude that the district court's curative instruction does not warrant a new trial.

## IV.    CONCLUSION

Based on the foregoing, we **AFFIRM** the district court's rulings.